Richard **VAN ZWOL** and **American Family Insurance Company**, **Appellants**,

v.

Daniel Todd **BRANON** and **Richard Allen, Defendants**,

**and**

**Louie Vajgrt, Appellee.**

No. 88–793.

Supreme Court of Iowa.

May 17, 1989.

Michael J. Moon of Cartwright, Druker & Ryden, Marshalltown, for appellants.

William J. Lorenz of Welp, Harrison, Brennecke & Moore, Marshalltown, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

SCHULTZ, Justice.

In this appeal we must re-examine our motor vehicle owner liability statute, Iowa Code section 321.493 (1983). This section specifically places liability on the owner for damages caused by a negligent driver when the vehicle "is driven with the consent of the owner." In determining implied consent under this section, we must decide whether the act of an owner loaning a vehicle without restriction vests the permittee with the same authority as the owner to select a driver as a matter of law. The trial court decided this case on the facts, holding that the plaintiffs had not established that the vehicle was driven with the implied consent of the owner. We affirm.

Louie Vajgrt, the owner of an old pickup, and Richard Allen had been friends for over twenty years. Vajgrt is a sixty-four year old farmer. Allen is a welder who lives in Marshalltown. At the time of the accident, Daniel Todd Branon was a seventeen-year-old student who resided with his mother and Allen. Vajgrt stated that he knew Branon through Allen very faintly but that he did not see him often.

On November 3, 1984, Branon was operating Vajgrt's pickup when it collided with a vehicle owned by Richard Van Zwol and driven by Stephanie Honeck. As a result of the accident, Van Zwol's insurer, American Family Mutual Insurance Company (American), paid for Honeck's injuries and for the death of a passenger in the Van Zwol vehicle. American and Van Zwol sued Vajgrt, Allen and Branon for the personal and property damages incurred. Allen and Branon defaulted, but Vajgrt defended this action, asserting that Branon did not have Vajgrt's consent to drive his pickup.

On the date of the accident, Vajgrt visited Allen at his residence. When he learned that Allen was going to haul railroad ties, Vajgrt volunteered to assist Allen. Allen owned a pickup that had a topper on it which made it difficult to load and unload. Vajgrt suggested they use his pickup and his brother's pickup to make the work easier.

Later they met at Vajgrt's farm. Vajgrt departed in his brother's pickup and left his own pickup with Allen to drive.

In the meantime, Branon's mother suggested that he help Allen in gathering the ties. Branon came to the farm after Vajgrt left and without Vajgrt's knowledge. With the additional help, Allen decided to use all three pickups. Allen told Branon to take Vajgrt's truck to the area where they planned to pick up the railroad ties. While traveling to that area, Branon was involved in the accident leading to this law suit.

The evidence concerning Branon's permission to use the pickup was undisputed. Vajgrt's only instruction to Allen concerning the use of the truck was to "take my truck." When Vajgrt learned of Branon's accident with the truck, he inquired, "What's he doing with my truck?" Branon, Allen and Vajgrt testified that Vajgrt did not give Branon permission to drive the pickup. Vajgrt testified that he had never allowed anyone but Allen to use his truck. These uses occurred on only a few occasions when they were working on Vajgrt's farm. He stated that he would not have allowed Branon to use his vehicle.

For convenience, we shall refer to the person receiving express consent to drive the vehicle from the owner as the first permittee and the person receiving express consent from the first permittee as the second permittee. Here, Allen is the first permittee and Branon is the second permittee.

The trial court concluded that the issue of whether the owner's consent to the first permittee was broad enough to include an implied grant of authority of consensual use by a second permittee called for a factual determination. The court found that no implied consent was granted by Vajgrt to allow any other driver of the pickup. Grounded on this finding, the court concluded that the vehicle was not driven with Vajgrt's consent pursuant to section 321.493 and held for Vajgrt.

Plaintiffs raise two issues on appeal. First, they contend that the trial court erred in ruling that no implied consent was granted by the owner to allow another driver to operate the motor vehicle. Second, they maintain that we should adopt the "initial permission" rule.

I. *Implied Consent.* Plaintiffs urge the trial court erred in holding Vajgrt had not consented to the use of his truck by Branon. They urge that Vajgrt consented to the use of the truck by Allen to haul railroad ties and that the truck was used for this specific purpose, even though it was driven by Branon. Plaintiffs maintain there was no restriction placed upon the use of the vehicle, its ultimate use was

consistent with the original permission and that Vajgrt should be held accountable pursuant to section 321.493.

Were we to adopt plaintiffs' argument, the trial court in this situation would decide the matter of implied consent of the owner as a matter of law, rather than as a factual determination by the trier of fact. This is contrary to our case law.

The issue of whether a vehicle has been driven with the "consent of the owner" pursuant to section 321.493 has been frequently litigated. These cases typically involve issues of deviation from the intended use, *e.g.,* *Usher v. Stafford,* 227 Iowa 443, 448–49, 288 N.W. 432, 435 (1939), and whether the specific driver had consent to operate the motor vehicle. *E.g., Moritz v. Maack,* 437 N.W.2d 898, 900 (Iowa 1989).

We have formulated certain principles which are applicable to this case. At common law, in the absence of agency, the owner of a vehicle was not responsible to third persons for damage caused by the negligence of the driver. *Robinson v. Bruce Rent–A–Ford Co.,* 205 Iowa 261, 264, 215 N.W. 724, 725 (1927). Section 321.493 creates a statutory cause of action and therefore should be strictly construed. *Schneberger v. United States Fidelity & Guar. Co.,* 213 N.W.2d 913, 918 (Iowa 1973).

When ownership of a vehicle is admitted, a presumption is created that the vehicle was operated with the consent of the owner. *McKirchy v. Ness,* 256 Iowa 744, 747, 128 N.W.2d 910, 912 (1964). The inference of consent may be negated by proof that there was no consent. *Mitchell v. Automobile Underwriters,* 225 Iowa 906, 910, 281 N.W. 832, 835 (1938). As applied to a second permittee, this inference may be overcome by the owner's showing that the first permittee was not given express or implied authority to delegate permission for the vehicle's use. *Schneberger v. Glenn,* 176 N.W.2d 782, 785 (Iowa 1970). Generally, a factual determination must be made as to whether the initial grant of authority was broad enough to include an implied grant to give the second permittee authority to use the

vehicle. *Id.* The inference may be overcome and the matter of consent determined as a matter of law when the undisputed and uncontroverted evidence conclusively establishes the facts. *Moritz,* 437 N.W.2d at 900 (*citing Curry v. Bickley,* 196 Iowa 827, 832, 195 N.W. 617, 619 (1923)).

Turning to plaintiffs' contentions, they urge that because Vajgrt had consented to the purpose for which the pickup was used, he should be responsible for this use. We believe that this claim misreads Vajgrt's defense. Vajgrt made no claim that his consent was conditioned upon a specific use of the pickup. This case is unlike a situation where the driver had permission to use the vehicle, but deviated from the restrictions on its use. *Usher,* 227 Iowa 443, 288 N.W. 432 (owner did not consent, as a matter of law, for employee's driving when employee violated company rule by deviating five miles from his route to take a co-employee home). Vajgrt's contention is that Allen did not have implied authority to allow Branon to operate his vehicle. The fact that the use was consistent with the permission given to Allen is merely a circumstance that can be considered in determining whether Vajgrt gave implied consent to use by a second permittee.

The narrow issue is whether owner Vajgrt has presented the type of proof controverting the presumption of consent that would require a factual determination. To ascertain what showing must be made, examination of our individual cases is instructive.

We first scrutinize an express prohibition placed on the first permittee. In *Schneberger,* the owner had written the first permittee a note stating that she did not want anyone else to use the car. Despite the fact that the owner had in the past loaned the car to the second permittee, we held that the owner conclusively rebutted the inference of consent as a matter of law and was entitled to a directed verdict. *Id.* at 787. In the present case there was no express prohibition against the use by a second permittee.

In three other cases, we held that the issue of implied consent required a factual determination. *Iowa Mut. Ins. Co. v. Combes,* 257 Iowa 135, 131 N.W.2d 751 (1964); *Olinger v. Tiefenthaler,* 226 Iowa 847, 285 N.W. 137 (1939); *Greene v. Lagerquist,* 217 Iowa 718, 252 N.W. 94 (1933). The *Combes* owner entrusted a truck to an employee to have a radio installed. We held that the vehicle's operation by a repairman presented a question of fact regarding implied consent by the owner to allow the repairman to drive the vehicle, if necessary, for the repairs to be made. *Combes,* 257 Iowa at 143, 131 N.W.2d at 755. In *Olinger,* the car owner let his brother use the vehicle for an extended period and the brother, without the owner's knowledge, allowed a friend to drive the vehicle. Although both the owner and the driver agreed that the driver never asked the owner's permission to drive, we held that the testimony did not amount to a positive and clear statement that the owner had not consented to the driving of the car, especially when the brother did not testify on his authority to permit others to drive. *Olinger,* 226 Iowa at 852, 285 N.W. at 139. We held that this was fact question and stated:

> In determining this issue, the reasonableness or unreasonableness of the character of the testimony and facts and circumstances casting doubt or uncertainty on the evidence, though uncontradicted, may be considered.

*Id.* at 852, 285 N.W. at 139. In *Greene,* the owner had leased the vehicle to a company who, in turn, supplied it to their salesman. Without express authority from his employer, the salesman secured another person to use the vehicle for delivery of the company's products. We again held that the matter of implied consent was a jury question. *Greene,* 217 Iowa at 724, 252 N.W. at 97.

■ By the authority of these cases, we believe the trial court correctly decided the issue of implied consent as a question of fact. While it is true the driver was using the vehicle for the same purpose for which the original consent had been given, other facts and surrounding circumstances indicate that Vajgrt did not impliedly consent

to the second driver. As the trial court stated:

In this case, Vajgrt had never permitted or expressly consented in the past to any other driver of the pickup than Richard Allen. He had no contact with Branon on the day of the accident. He had no knowledge that Branon was even going to be coming to the farm on the date in question. Neither did Richard Allen know that Branon would be stopping by to assist him.

Vajgrt and Allen were out in the country on Vajgrt's farm. No other persons were around. The reasonable inference from the facts and circumstances was that Vajgrt expected Allen to follow immediately in the pickup truck. The likelihood of anyone else showing up, or that if they did show up, would arrange to drive the pickup, in that short interval of time is extremely remote. Louie Vajgrt could not have reasonably anticipated such a chain of events under the circumstances. It is not a circumstance where one would expect any need to verbally express a limitation or condition on who would drive the vehicle.

The circumstances clearly called for a factual resolution.

II. *"Initial Permission" Rule.* Plaintiffs also urge that we should adopt the "initial permission" rule. They cite a Minnesota case which involves the interpretation of an omnibus clause in an insurance policy and defines the rule as follows:

This rule holds that when permission to use a vehicle is initially given, subsequent use short of actual conversion or theft, remains permissive within the meaning of the Omnibus Clause, even if such use was not within the contemplation of the parties or was outside any limitation placed upon the initial grant of permission.

*Milbank Mut. Ins. Co. v. United States Fidelity & Guar. Co.*, 332 N.W.2d 160, 162 (Minn.1983). The Minnesota court stated that its owner's responsibility law had been given liberal interpretation and that the trend of their cases was to interpret this statute and omnibus clauses in liability insurance policies "so as to effect public policy affording protection to victims of automobile accidents" rather than to vehicle owners. *Id.* at 166.

Plaintiffs urge that public policy considerations and the protection of the public support the "initial permission" rule, citing *Souza v. Corti*, 22 Cal.2d 454, 139 P.2d 645 (1943). In *Souza*, the owner of an automobile allowed his son to take the car, with the admonition not to lend it to anyone else. The son allowed his friend to drive the car so that he could be in another car with a girl while they traveled to a dance hall. The California court held that, as a matter of law, the owner was responsible. *Id.* at 461, 139 P.2d at 648.

However we believe the California case is distinguishable. The California statute provided for owner liability for damages resulting from the negligence of "any person using or operating the same with the permission, express or implied, of such owner." *Id.* at 455, 139 P.2d at 645. The California court found it significant that the statute included the term "use" and distinguished between the terms "use" and "operate." Our Iowa statute is not so broad. It only provides for liability when the car is "driven" with the consent of the owner. § 321.493.

In speaking of the public policy for their statute, the Minnesota court reports that it "[has] given the statute a liberal construction." *Milbank*, 332 N.W.2d at 165. We have similarly recognized the purpose of the statute is to protect an innocent third party from the careless driver by making the owner responsible. *Briner v. Hyslop*, 337 N.W.2d 858, 870 (Iowa 1983). However, we have stated that our statute is to be strictly construed. *Schneberger*, 213 N.W.2d at 918. Thus we believe that our approach is more tempered than the Minnesota court's.

■ Were we to adopt the "initial permission" rule, we would abandon a long line of cases which hold that the existence of implied consent is to be shown by the circumstances surrounding the original grant of permission or by a course of conduct on the part of the owner inconsistent

with the grant of authority. *See Schneberger,* 176 N.W.2d at 786. "The operation of the consent provision of section 321.493 has been clearly defined by this court in the seventy years since its enactment." *Moritz,* 437 N.W.2d at 900. The legislature has apparently agreed with our interpretations because it has left this section unchanged for all intents and purposes down through these many years. Under these circumstances, we believe the plaintiffs' claim should be made to the legislature, rather than this court. We decline plaintiffs' invitation to adopt the "initial permission" rule.

AFFIRMED.