**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee,**

**v.**

**EMPLOYERS MUTUAL CASUALTY COMPANY, Appellant.**

No. 91–1823.

Court of Appeals of Iowa.

March 30, 1993.

James F. Pickens of Pickens, Barnes & Abernathy, Cedar Rapids, for appellant.

Richard S. Fry and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

This case involves a coverage dispute between two insurance companies which arose out of an automobile accident that occurred August 2, 1985. Employers Mutual Casualty Company appeals the district court's ruling, following a declaratory judgment action, declaring Marthanne Morton had the consent of the Amana Society, Employers Mutual's insured, to drive the Society's pickup truck and declaring Employers Mutual liable for primary liability coverage in the accident involving the vehicle.

David Louzek became the general business manager of the Amana Society in 1984. As general manager, Louzek was in effect the chief executive officer of the Society and was responsible for the Society's day-to-day operations. In late July of 1985, Louzek contacted Henry J. Vien, the manager of Amana Woolen Mill and borrowed a 1983 Chevrolet pickup owned by the Society to assist Louzek in moving his residence from Homestead, Iowa to Ladora, Iowa. Louzek had used the same Society pickup on at least three prior occasions, all with the knowledge of Vien.

On August 2, 1985, Louzek's girlfriend, Marthanne Morton, was driving the Society's pickup at Louzek's direction and for Louzek's benefit on a trip related to Louzek's move. During this trip, Morton collided with another truck. As a result of this collision, Morton and her son, Dane, were injured, and Louzek's son, William, was killed.

Following this accident, Dane Morton and William Louzek's estate filed suit against Marthanne Morton. State Farm Mutual Automobile Insurance Company insured Morton for any vehicle she was driving with the owner's consent, and Employers Mutual Casualty Company insured the

Society's vehicles driven with the Society's consent. This underlying suit was eventually settled with State Farm paying its insurance policy limits of $50,000.

While this underlying suit was pending, Employers Mutual instituted this declaratory judgment action seeking a ruling that State Farm's policy provided primary coverage. The fighting issue was whether the Society had given Morton its consent to drive the pickup. If Morton had the consent of the Society to drive its pickup at the time and place of the collision, then Employers Mutual's policy is primary, and Employers Mutual owes the $50,000 paid by State Farm. If Morton did not have consent, then State Farm's policy is primary and Employers Mutual had no insurance coverage of Morton. After considering the evidence, the district court found the Society had given its consent to Morton to drive the pickup. Employers Mutual appeals.

■ In this law action, our scope of review is for the correction of errors of law. Iowa R.App.P. 4 (1993). Findings of fact in a law action are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1) (1993). We construe the trial court's findings broadly and liberally. *Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988).

A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted.

*Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978).

■ "Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989) (citation omitted). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell*

*Mut. Reins. Co.*, 431 N.W.2d at 785 (citation omitted).

The sole issue on appeal is whether the trial court correctly determined that Marthanne Morton, a non-member of the Amana Society, had the consent of the Society to drive its pickup at the time and place the pickup was involved in the collision. We conclude Morton did have the Society's implied consent, and we affirm the trial court's ruling.

■■■ When ownership of a vehicle is admitted, a rebuttable presumption is created that the vehicle was operated with the consent of the owner. *Van Zwol v. Branon*, 440 N.W.2d 589, 591 (Iowa 1989) (citing *McKirchy v. Ness*, 256 Iowa 744, 747, 128 N.W.2d 910, 912 (1964)). *See also* Iowa Code § 321.493 (1991). In the present case the Amana Society does not dispute that it owned the Chevrolet pickup driven by Morton. The inference of consent may be rebutted by proof that no consent existed. *Mitchell v. Automobile Underwriters*, 225 Iowa 906, 910, 281 N.W. 832, 835 (1938). As applied to a second permittee (or third party), this inference may be overcome by the owner's showing that the first permittee was not given express or implied authority to delegate permission for the vehicle's use. *Schneberger v. Glenn*, 176 N.W.2d 782, 785 (Iowa 1970). Generally, a factual determination must be made as to whether the initial grant of authority was broad enough to include an implied grant to give the second permittee authority to use the vehicle. *Van Zwol*, 440 N.W.2d at 592.

Accordingly, the Society is presumed to have consented to Morton's use of the pickup unless it can be shown that Louzek, the first permittee, was not given implied authority to delegate permission for the vehicle's use. In *Van Zwol*, the supreme court determined implied consent had not been given by the owner after focusing on whether the facts and circumstances of that case, and their reasonable inferences, posed a situation where one would expect a need to verbally express a limitation or condition on who would drive the vehicle. *Id.* at 593.

The *Van Zwol* court, relying on the facts in that case, concluded it would be entirely unanticipated or unexpected for the owner of the pickup (Vajgrt) to need to express a limitation on the first permittee's (Allen) use of the vehicle. The court stated:

Vajgrt and Allen were out in the country on Vajgrt's farm. No other persons were around. The reasonable inference from the facts and circumstances was that Vajgrt expected Allen to follow immediately in the pickup truck. The likelihood of anyone else showing up, or that if they did show up, would arrange to drive the pickup, in that short interval of time is extremely remote. Louie Vajgrt could not have reasonably anticipated such a chain of events under the circumstances. It is not a circumstance where one would expect any need to verbally express a limitation or condition on who would drive the vehicle.

*Id.* at 593.

After carefully considering the facts in the current case, however, we conclude the circumstances and reasonable inferences therefrom did pose a situation where a person would reasonably expect a need to verbally express a limitation or condition on who would drive the Society's pickup. Upon viewing the circumstances in their entirety, it is clear Louzek's authority and permission for personal use of the Society's pickup was broad enough in the absence of an express limitation to permit Morton to operate the vehicle with the Society's consent.

First of all, substantial evidence in the record indicates the Society did not have a formal employee policy communicated in the employee handbook prior to the date of the collision prohibiting the personal use of vehicles either by employees or by others for their benefit. Any informal restrictions on personal use of Society vehicles was known, if at all, by only a few members of the Society's board of directors, and such restrictions were never communicated to Louzek or other employees of the Society. More importantly, a course of conduct had been established at the Society where personal use of Society vehicles and other

personal property by employees was frequent and had been condoned or overlooked by the Society.

Furthermore, Louzek, by the express terms of his job description as general business manager, possessed the power to modify or change any management committee policy concerning day-to-day operations, including the personal use of Society vehicles and other personal property. In this regard, Louzek had the authority to give himself the Society's permission to use the pickup, as he did, in effect, in the present case. Vien merely furnished the pickup to his superior, Louzek, upon Louzek's request—just as Vien had done in the past. Accordingly, Louzek expressly gave the Society's consent to Morton to use the pickup when Louzek directed Morton to drive the pickup for the purpose of moving Louzek's belongings on the date of the collision.

In addition, the facts and circumstances of this case illustrate the Society had given its implied consent for Morton to use the pickup regardless of the above discussion concerning Louzek's express consent. Louzek obtained the pickup with Vien's knowledge the week prior to the collision for the specific purpose of moving his personal belongings. At the time of Louzek's move, Reynold Moessner, a member of the Society's board of directors, knew Marthanne Morton was living with Louzek on a part-time basis. Therefore, the Society was aware that the pickup was being used by Louzek to assist his move, and it knew Morton lived with Louzek in the residence from which Louzek was moving.

These facts alone pose a situation where a person would reasonably expect a need to verbally express a limitation or condition on who could drive the Society's pickup during the move. The Society should have reasonably known or suspected that, under the circumstances, Morton would be assisting Louzek in the move and would foreseeably be driving the pickup during the move. The Society should have reasonably anticipated such a chain of events under the circumstances, giving rise to the need to verbally express a limitation or condition on who could—or could not—drive the Society's pickup during the move.

This is particularly true in light of the additional facts that: (1) the Society had no formal policy prior to the date of the collision prohibiting the personal use of Society vehicles either by employees or by others for their benefit; (2) a course of conduct had been established at the Society where personal use of Society vehicles and other personal property by employees was frequent and had been condoned or overlooked by the Society on numerous occasions; (3) the Society had already furnished Louzek with a company car with the express understanding that Louzek's use of the car was "unfettered," which the board of directors itself defined as without restriction or control; and (4) the Society had knowledge that Louzek had previously substituted use of the pickup in question for use of the car the Society had provided him.

Viewing these circumstances in their entirety, Louzek's authority and permission for personal use of the Society's pickup was broad enough in the absence of the Society's express limitation concerning Marthanne Morton's use of the pickup to constitute implied consent to Morton's use of the vehicle during the move. The collision occurred at a time and place when Morton was driving the pickup for Louzek's benefit during Louzek's move. As a result, Marthanne Morton was covered under Employers Mutual's liability insurance policy at the time of the collision, and Employers Mutual is therefore liable for primary liability coverage for the collision.

Accordingly, we affirm the district court's declaratory judgment order.

**AFFIRMED.**