# IN THE COURT OF APPEALS OF IOWA

No. 23-0974
Filed October 30, 2024

**CINCINNATI INSURANCE COMPANY and BROWN'S HEAVY EQUIPMENT,**
    Plaintiffs-Appellees,

**vs.**

**SKYLER MCKASSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, John J. Haney, Judge.

An injured third-party appeals the district court's declaratory judgment that an employee did not have consent to drive his employer's vehicle when involved in an accident and thus that the employer is not liable under Iowa Code section 321.493(2)(a) (2021) and the employee was uninsured by the employer's insurance policy. **AFFIRMED.**

Brandon Brown of Parrish Kruidenier Dunn Gentry Brown Bergmann & Messamer, L.L.P., Des Moines, for appellant.

Michael J. Frey, P.C. of Mayne, Hindman, Frey, Parry & Wingert, Sioux City, for appellees.

Considered by Schumacher, P.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

This declaratory-judgment proceeding comes down to a fact dispute about consent: Did Brown's Heavy Equipment give express or implied consent for its employee, Charles Hartwig, to use its truck for a personal project on a September 2021 weekend when Hartwig ran a stoplight while driving the truck intoxicated and caused an accident? Brown's[1] alleges that it did not give consent. And so, it contends that it is not liable for the accident under Iowa Code section 321.493(2) (2021) and that Hartwig is not insured under its insurance policy. Skyler McKasson, who was injured by Hartwig in the accident, takes the other side.[2]

The district court agreed with Brown's, finding that Hartwig had neither express nor implied consent to use the truck. And McKasson appeals, arguing that we should review the ruling de novo, assess the credibility of the witnesses differently, and find consent ourselves. But this declaratory judgment action was tried to the court at law—not in equity. So we review only for corrections of errors at law—not de novo. *See* Iowa R. App. P. 6.907. Thus, the district court's factual findings are binding on us if supported by substantial evidence. This standard sets a high bar to clear on appeal, requiring affirmance even if substantial evidence could have also supported the contrary finding. Because we agree that substantial evidence supports the district court's finding that Hartwig lacked consent to drive Brown's truck, we affirm the court's declaratory judgment.

---

[1] Brown's insurance provider, Cincinnati Insurance Company, is also a party to the declaratory judgment proceeding and this appeal. For readability, we refer only to Brown's even though they have jointly presented their arguments throughout.
[2] Other parties, including Hartwig, joined with McKasson in arguing for a consent finding in the district court. But only McKasson appeals.

**I.     Background Facts and Proceedings**

Brown's sells and services heavy construction and mining machinery and equipment.  Hartwig worked as a mechanic for Brown's, mainly servicing and repairing customers' equipment at their locations.  Brown's assigned Hartwig a Ford F-650 commercial truck for Hartwig's use in traveling to perform his service and repairs.

The truck was one of about a dozen trucks in the fleet owned by Brown's and its location was GPS-tracked by Brown's.  Brown's employee handbook, which Hartwig received, had a section on "Fleet Vehicle Use" that set certain conditions for granting "[t]he privilege of driving a Fleet Vehicle . . . on Company business" and required: "Employees must be approved to drive Fleet Vehicles prior to their use."  The handbook also warned that employee would be subject to discipline for "[f]ailure to comply with [its] policy on vehicle usage" and for "[i]mproper or unauthorized use of Company equipment or services."

On top of the written policies, Brown's also had other policies in place since its founding that were communicated orally to employees.  These were well known to Brown's employees, including Hartwig.  While Brown's trucks were typically stored overnight at Brown's shop, with permission of Brown's president (also its owner), employees could keep the truck at home overnight if a job site was closer to their home than the shop.  Employees "normally" followed this permission policy.  And Hartwig "very, very seldom" kept his truck at home.  Brown's president's permission was also required before an employee could drive the truck for personal—rather than business—use.

In September 2021, Hartwig twice borrowed the truck to use on the weekend for a personal project at his home. He first did so on the weekend of September 11 and 12. The parties presented conflicting evidence whether Hartwig asked for permission before taking the truck that time. But it is undisputed that Hartwig used the truck for his personal use without incident that weekend.

Things did not go so smoothly the second time. Hartwig again took the truck from Brown's shop for his personal use on Saturday, September 25. He tried to return it Sunday evening while intoxicated with alcohol. But along the way, Hartwig failed to stop at a stop sign and crashed into another vehicle. McKasson was driving the other vehicle—which was damaged—and he and another passenger were injured. Hartwig also had a passenger in the truck. Hartwig was charged with and convicted of operating while intoxicated. *See* Iowa Code § 321J.2. After learning of the accident, Brown's immediately suspended Hartwig and then terminated him a few months later.

Brown's sued Hartwig and the three others injured in the accident, seeking a declaratory judgment that Brown's is not liable for the accident under Iowa Code section 321.493(2)(a) and that Hartwig was not insured under the insurance policy because Hartwig did not have Brown's consent to drive the truck.[3] McKasson and the other defendants who answered the petition[4] all admitted that "[t]he relief requested in this declaratory petition is at law." And Hartwig also admitted the allegation that he "did not ask Dennis Brown or any employee of Brown's Heavy

---

[3] Eventually, McKasson's insurance provider—Pekin Insurance—also intervened as a defendant.

[4] One of the other injured-party defendants did not appear, and the district court entered a default judgment against her.

Equipment for permission to take the Ford F-650 truck off the business premises for his own personal use before doing so on September 26, 2021."

The court held a one-day bench trial in February 2023. McKasson, Hartwig, and the other defendants argued that the evidence showed Hartwig had consent to drive the truck on the day of the accident while Brown's argued that he did not.

In a thorough order, the district court found that Hartwig had neither express nor implied consent from Brown's to drive its truck for his personal use at the time of the accident. The court recognized that Brown's ownership of the truck created a rebuttable presumption that Hartwig had consent but concluded it was overcome by "[t]he weight of the testimony and the Court's assessment of witness credibility." The court found that the testimony of Brown's president "that Hartwig did not ask permission to use the [truck] on or before the weekend of the accident," and that "Hartwig admitted not having permission to use the vehicle when he met with him the week following the accident" to be "credible." The court reasoned this finding was also supported by exhibits submitted into evidence and Hartwig's answer to the petition admitting he did not ask permission.

As for implied consent, the court rejected the defendants' allegation that Hartwig had implied consent from his prior use of the truck a couple of weeks before the accident. The court again found that the president's "testimony was more convincing than Hartwig's" and thus found that he and Hartwig "did not talk or communicate about" using the vehicle before that use either. And the court found that regardless, "Hartwig knew he had to get [the president's] permission for each personal use of a company vehicle." The court also rejected their arguments that Brown's did not regularly enforce any of its policies, such as personal use of

the shop, finding "[p]ersonal use of company property appears to have been rare over the years, but nonetheless, required [the president's] authorization."

Because Hartwig did not have Brown's consent, the district court also declared that Brown's is not liable for the accident under Iowa Code section 321.493(2)(a) and that Hartwig was not insured under the insurance policy. No party moved for reconsideration under Iowa Rule of Civil Procedure 1.904(2). McKasson now appeals.

## II.     Standard of Review

Because McKasson challenges the district court's factual finding that Hartwig lacked consent to drive the truck when he injured McKasson, the fighting issue on appeal is the standard of review. McKasson argues we should review the finding de novo, free to weigh the evidence anew and make our own finding that more likely than not Hartwig had consent. But Brown's argues we should review for corrections of errors at law and are thus bound by the court's lack-of-consent finding so long as it is supported by substantial evidence. We agree with Brown's.

Our standard of review for a declaratory-judgment ruling "depends upon how the action was tried to the district court." *Van Sloun v. Agans Bros, Inc.*, 778 N.W.2d 174, 178 (Iowa 2010). "[W]e consider the pleadings, relief sought, and nature of the case to determine whether a declaratory judgment action is legal or equitable." *Id.* (cleaned up). If "there is uncertainty, a litmus test we have applied is whether evidentiary objections were ruled on by" the district court. *Id.* (cleaned up). "If so, the action is one in law." *Id.* We have also considered whether the parties filed motions "normally made in legal actions" and whether the court issues a "decree" as is typical in equitable actions. *Id.*

This case was tried as a law action. For starters, the petition was filed at law and McKasson and the other defendants admitted in their answers that "[t]he relief requested in this declaratory petition is at law." Brown's did not seek an injunction or any other equitable relief—just requests for declarations of rights under its insurance policy and Iowa Code section 321.493(2)(a). *See id.* at 178 ("Generally, an action on contract is treated as one at law."). McKasson filed— though ultimately withdrew after resolving the dispute—a motion in limine seeking to exclude certain testimony and exhibits as would be normal in a legal action. During trial, the court repeatedly ruled on evidentiary objections, sustaining some of them. And in the end, the court did not enter a decree or grant any equitable relief, but issued an order granting the requested declaratory judgment.

Because the case was tried at law, our review is for correction of legal errors. *See* Iowa R. App. P. 6.907; *Van Sloun*, 778 N.W.2d at 179. The district court's findings bind us if they are supported by substantial evidence. *See Van Sloun*, 778 N.W.2d at 179. "Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." *State Farm Mut. Auto. Ins. v. Employers Mut. Cas. Co.*, 500 N.W.2d 80, 81 (Iowa Ct. App. 1993). And when engaging in this review, we ask "whether substantial evidence supports the finding actually made by the trial court, not whether substantial evidence would have supported a different finding." *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 691 (Iowa 1999).

### III.     Consent of the Owner to Drive the Truck

Applying this proper standard of review, we have little difficulty concluding that substantial evidence supports the district court's finding that Hartwig lacked

Brown's express or implied consent to drive the truck owned by Brown's. Under the owner-liability statute—also incorporated into the insurance policy here—Brown's ownership of the truck creates a rebuttable presumption that Hartwig drove the truck with Brown's consent. *See Farm & City Ins. v. Gilmore*, 539 N.W.2d 154, 159 (Iowa 1995); Iowa Code § 321.493(2)(a). But the inference of consent "is not a strong one, and it in no way changes the burden of proof." *McKirchy v. Ness*, 128 N.W.2d 910, 747 (Iowa 1964). This consent can be either express or implied from the circumstances. *Moritz v. Maack*, 437 N.W.2d 898, 900 (Iowa 1989). And when consent is expressly restricted, it can negate the consent that would otherwise be implied. *See id.* at 901–03.

Supporting the district court's finding that Brown's did not give express consent is the testimony of Brown's president that he did not do so and that Hartwig admitted to him the week following the accident that Hartwig did not have permission. So too does Hartwig's admission in his answer, a statement in his initial disclosures, and his recorded statement to an insurance claims representative all support this finding. And both Hartwig's and the president's cell phone records show no evidence of calls or texts between them asking for or granting express consent.

Turning to implied consent, Brown's president's testimony again is substantial evidence that Hartwig did not get permission for the first September use of the truck that could imply continued permission at the time of the accident. The employee handbook and the testimony of both Hartwig and the president also supports that the policy requiring prior permission before using the truck for personal use was well-established and known and previously followed by Hartwig.

Even Hartwig admitted he was unaware of another employee violating the personal-use policy for the vehicles, supporting the district court's finding that "[p]ersonal use of company property appears to have been rare over the years." And Brown's enforced the policy against Hartwig when it learned of his unauthorized use—putting him on leave and then terminating him. True, there is evidence—most notably Hartwig's testimony—from which the district court might have reached a contrary conclusion. But that is not the question on substantial-evidence review. *See Van Oort Constr. Co.*, 599 N.W.2d at 691.

McKasson offers no real counterargument that this evidence is insubstantial. His arguments mainly rest on the faulty premise that we can weigh the evidence differently on de novo review, which we have already rejected. He also contends—for the first time on appeal—that the district court improperly considered character evidence when it mentioned that Brown's president "presented as a person of good character who valued his employees and helped them out when requested." *See* Iowa R. Evid. P. 5.404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). But even assuming the court's mention of the president's character was improper, to preserve error for our review, McKasson needed to make that argument to, and get a ruling from, the district court. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Even if he only learned of the issue when the district court issued its ruling, he still could have—and was required to—file a motion for reconsideration under Iowa Rule of Civil Procedure 1.904(2). *See In re Marriage of Gensley*, 777 N.W.2d 705, 718–19 (Iowa Ct. App. 2009) (holding error was not preserved

regarding issue only apparent from ruling when no party filed rule 1.904 motion). Because error is not preserved, we do not consider this evidentiary argument further.

Substantial evidence supports the district court's finding that Hartwig lacked Brown's express or implied consent to drive a truck owned by Brown's. And McKasson makes no other challenge to the rest of the declarations of rights that logically followed under section 321.493(2)(a) and the insurance policy. We thus affirm the district court's declaratory judgment.

**AFFIRMED.**