**IMT INSURANCE COMPANY, an Iowa Corporation, Appellant,**

v.

**Dirk AMUNDSEN, Melvin Bohr, the Winnebago Council of the Boy Scouts of America, an Iowa Non-profit Corporation, Kris Barness, a Minor by Murvel Barness, His Father and Next Friend, and Murvel Barness and Margaret Barness, Individually, Appellees.**

No. 84–1651.

Supreme Court of Iowa.

Nov. 13, 1985.

James E. Walsh, Jr., and Gail D. Fokken of Clark, Butler, Walsh & McGivern, and James R. Hellman, Waterloo, for appellant.

Donald H. Gloe of Miller, Pearson, Gloe, Burns and Beatty, P.C., Decorah, for appellee Amundsen.

Mark D. Buchheit, West Union, for appellee Bohr.

George Lindeman of Lindeman & Yagla, Waterloo, for appellee Winnebago Council of Boy Scouts of America.

Jay P. Roberts of Swisher & Cohrt, Waterloo, for appellees Barness.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McCORMICK, SCHULTZ and WOLLE, JJ.

McCORMICK, Justice.

This declaratory judgment action concerns applicability of a homeowner's liability policy exclusion of liability resulting from use by the insured of motorized vehicles. Like the trial court, we find that the homeowner's policy of plaintiff IMT Insurance Company provided coverage to the policyholder defendant Dirk Amundsen in the circumstances alleged in this case. Therefore we affirm the declaratory judgment.

The trial court received evidence bearing on the coverage dispute. The case was tried to the court at law, and the parties accept the trial court's findings of fact on the events that gave rise to the action.

On November 7, 1981, Amundsen was a scoutmaster in charge of a group of boy scouts employed to glean corn from a field on the Melvin Bohr farm in Winneshiek County. Bohr furnished a tractor and wagon. He insisted that the tractor be driven by his eleven-year-old son. Amundsen had no role in selecting the operator of the tractor and had no authority over the operation of the tractor and wagon. He was present merely to supervise the work of the boy scouts.

Amundsen accompanied one group of scouts who manually picked up corn and put it in piles. Another group followed the wagon pulled by the tractor and threw the piles of corn into the wagon. Kris Barness was among the scouts in the second group. He was injured when he attempted to ride on the wagon tongue and fell off.

Subsequently Kris and his parents sued Amundsen and the other defendants, charging Amundsen with negligence in various respects in failing to warn or guard against the danger. IMT appeared in the action for Amundsen under a reservation of rights and then separately instituted the present declaratory judgment action to determine the question of coverage. The trial court found that the policy covered Amundsen's potential liability. IMT then took the present appeal.

In typically broad terms, Amundsen's homeowner's policy provides coverage of his personal liability up to the policy limits for "all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence

to which [the] coverage applies." Coverage applies to occurrences that are not excluded. In contending the present occurrence is excluded, IMT relies on an exclusion of liability "resulting from the ownership, maintenance, use, loading or unloading by an insured of motorized vehicles or watercraft, except as provided under Incidental Liability and Medical Payments Coverages."

Specifically the question is whether Amundsen's purported liability for the injuries to Kris Barness resulted from the use by Amundsen of a motorized vehicle within the meaning of the exclusion.

■■■ General principles governing our answer to this question are well established. We must first decide what the language of the exclusion means and then decide what operative effect it has in the facts found by the trial court. No extrinsic evidence was offered on the interpretation issue. When words are not defined in the policy, we give them their ordinary meaning. In doing so and in determining the legal effect of the exclusion, we construe the provisions in their light most favorable to the insured. Exclusions are strictly construed against the insurer. *Connie's Construction Co. v. Fireman's Fund Insurance Co.*, 227 N.W.2d 207, 210 (Iowa 1975). If the exclusion is fairly susceptible to two meanings, one of which would afford coverage and one of which would not, the meaning that affords coverage will be adopted. *State Farm Automobile Insurance Co. v. Malcolm*, 259 N.W.2d 833, 836 (Iowa 1977).

Here the parties argue about whether the wagon is included in the policy definition of motorized vehicle. They also argue about whether if the wagon is not included in the definition the accident can be said to have resulted from use of a motorized vehicle for purposes of the exclusion. IMT contends the accident resulted from use of the tractor because the operation of the tractor was a contributing cause of the accident. Their position is supported by a line of California cases discussed in *Ohio Casualty Insurance Co. v. Hartford Accident and Indemnity Co.*, 148 Cal.App.3d

641, 645–46, 196 Cal.Rptr. 164, 167 (1983). *See also Progressive Casualty Ins. Co. v. Hockman*, 359 N.W.2d 685, 686 (Minn.Ct. App.1984). We assume, without deciding, that IMT is correct on this point.

The problem, however, is that the exclusion is applicable only to motorized vehicle "use ... by an insured." Even if use of a motor vehicle was a contributing cause of the injury, the exclusion is inapplicable unless the insured was the person using the vehicle. The cases relied on by IMT do not reach this issue.

IMT asserts it is sufficient that Amundsen was engaged in an activity in which operation of the tractor was a component. Under this argument Amundsen was using the tractor because the tractor was part of the gleaning operation. The entire working party, including the injured boy, would be using the tractor in this sense.

Amundsen contends for a narrower meaning of the term "use ... by an insured." He relies on the undisputed facts that he did not operate the tractor and had no authority over its operation.

The word "use" is not defined in the policy. We turn to its ordinary meaning. This meaning includes "the act or practice of using something," "to put into action or service: have recourse to or enjoyment of: employ," "to carry out a purpose or action by means of: make instrumental to an end or process: apply to advantage." *Webster's Third New International Dictionary* 2523–24 (1976). Synonyms include "employ," "avail," "utilize," and "apply."

■■■ Assuming the word "use" is susceptible to the broad meaning urged by IMT, it is also fairly susceptible to the narrower meaning urged by Amundsen. One may reasonably argue that use requires an element of control of the instrumentality. That element was admittedly lacking in the present facts. It is impossible to ascertain from the language of the policy which meaning was intended. Adopting the reasonable interpretation advocated by Amundsen, as we must, we conclude that the accident did not result from his use of

the tractor within the meaning of the exclusion.

We hold that the trial court was correct in finding the exclusion is inapplicable.

AFFIRMED.