544 A.2d 1017

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Brian G. Stuck**

**v.**

**John E. MOORE, June A. Moore, Darrin E. Moore, a Minor, by his Parents and Natural Guardians John E. Moore and June A. Moore, Charles L. Royer, Kay Royer, John E. Reed and Ohio Casualty Insurance Company. (Two Cases)**

**Appeal of OHIO CASUALTY INSURANCE COMPANY. (Two Cases)**

Superior Court of Pennsylvania.

Argued April 7, 1988.

Filed July 20, 1988

Peter J. O'Donnell, Lewistown, for appellants.

Theresa Shade, Harrisburg, for State Farm and Stuck, appellees.

Before BROSKY, MONTEMURO and JOHNSON, JJ.

JOHNSON, Judge:

Before us is an appeal from declaratory relief granted in favor of appellees State Farm Mutual Automobile Insurance Company and Brian Stuck. The case involves the interpretation of an "omnibus clause" contained in an automobile insurance policy issued by Ohio Casualty Insurance Company.

The accident underlying this action occurred in 1980, while Brian Stuck was driving a 1961 Pontiac owned by

Charles Royer and insured by Ohio Casualty. Although owned by Charles Royer the Pontiac was paid for and primarily used by his daughter Leigh Ann Royer. On the night of the accident Leigh Ann, Brian Stuck and some friends visited several bars. Initially, Leigh Ann drove the Pontiac. Later in the evening, when she wished to ride in her friends' car she gave Brian Stuck the keys to the Pontiac so that he could drive her car to the agreed upon destination. Brian Stuck did not have a driver's license. On the way to the destination an accident occurred.

Personal injury actions were brought naming Brian Stuck as defendant. Ohio Casualty denied coverage claiming, in part, that because Stuck was not licensed to drive he was excluded from coverage under the policy. At the time of the accident Stuck resided with his parents who had a no-fault insurance policy with State Farm Mutual Automobile Insurance Company. State Farm undertook the defense of claims asserted against Stuck. State Farm maintains that its policy provides only excess coverage. State Farm commenced the instant declaratory judgment action seeking a determination that primary liability coverage should be furnished by Ohio Casualty.

Following trial the jury returned a verdict specifically finding that Brian Stuck had a reasonable belief that he was entitled to use the vehicle in question. Accordingly, the trial court found Ohio Casualty's exclusion was avoided and that Brian Stuck was entitled to liability coverage under the Ohio Casualty policy.

Appellant, Ohio Casualty, filed a notice of appeal on September 21, 1987 from an order entered August 27, 1987 denying Ohio Casualty's Motion for Post–Trial Relief. This order is interlocutory and unappealable. *Slagter v. Mix*, 441 Pa. 272, 272 A.2d 885 (1971). No appeal should have been filed until a final judgment was entered. *Id.* Accordingly, the appeal at Number 596 Harrisburg 1987 is quashed.

Appellant filed a separate notice of appeal on October 20, 1987 in which it represented that the order of August 27,

1987 had been reduced to judgment. In fact judgment was entered upon the jury verdict and the grant of declaratory relief on October 19, 1987. Thus, the appeal at Number 651 Harrisburg 1987 is properly before us and shall be addressed on the merits.

In its appeal Ohio Casualty raises four issues:

1. Whether the lower court misconstrued the pertinent insurance policy exclusion?
2. Whether the policy exclusion applied as a matter of law?
3. Whether the lower court's charge and argument of opposing counsel were unfairly prejudicial?
4. Whether the jury verdict was based upon sympathy and prejudice?

 In its first issue Ohio Casualty contends that the trial court misconstrued the policy provision in question. This clause, contained in Ohio Casualty's policy, stated:

We do not provide Liability Coverage:

. . . .

11. For any person using a vehicle without a reasonable belief that the person is entitled to do so.

Ohio Casualty argues that "entitled" encompasses not only permission of the owner but also possession of a driver's license.

The trial court instructed the jury that they were to decide the narrow issue of whether or not Mr. Stuck had a reasonable belief that he was entitled to operate the vehicle. In charging on the meaning of "entitled" the court stated:

Now, the other word which we have trouble with here is entitled. What does entitled mean? And if we go to Websters Dictionary, New Collegiate Dictionary, it was copywrited [sic] in 1975, we find that "entitled" is stated as "to give a title to, designate". That's the definition one. "To furnish with proper ground for seeking or claiming something." As in "this ticket entitles bearer to free admission."

In this case, however, entitled, as I said, to give title to, designate. So, in this case here you must decide was Brian Stuck reasonable in his belief that he was entitled to drive the motor vehicle in question on that night? And in considering that, as I said, you should consider all the testimony including the question I asked Brian, "did you ever drive before?"

N.T., Judge's Charge to Jury, 6/26/86 at 26–27. Additionally the court charged that:

The term "entitled" as used in the Ohio Casualty policy means "permitted by the owner or person in lawful possession of the vehilce" [sic]....

*Id.* at 28. Ohio Casualty argues that this additional charge was erroneous. It argues that the term "entitled" is not ambiguous and that it includes not only permission but also possession of a license.

The question of the meaning of "entitled" in the Ohio Casualty policy is a question of interpretation. The often-quoted principles applicable to interpretation of insurance contracts provide that:

The task of interpreting a contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304–05, 469 A.2d 563, 566 (1983) (citations omitted). As applied to the case at hand what is essential is the determination of whether the policy provision is ambiguous. In determining this we have stated that:

A provision of a contract of insurance is ambiguous if reasonably intelligent persons, considering it in the context of the whole policy, would differ regarding its meaning.

*Musisko v. Equitable Life Assurance Society,* 344 Pa.Super. 101, 106, 496 A.2d 28, 31 (1985) (citations omitted).

Once again the clause at issue states:

We do not provide Liability Coverage:

. . . .

11. For any person using a vehicle without a reasonable belief that the person is entitled to do so.

Considering the clause in the context of the whole policy, we believe reasonably intelligent persons would differ regarding its meaning. Certainly one interpretation is that advanced by Ohio Casualty. That is, for a person to reasonably believe that he is entitled to use a car a person must have the owner's permission and a valid driver's license. However, the clause could also be interpreted to mean that a person can reasonably believe he is entitled to use a car once he has obtained the owner's permission. The mere use of the word "entitled" in the policy language does not require that one interpretation be accepted to the exclusion of the other. If Ohio Casualty had wanted to specifically exclude from coverage unlicensed drivers it could have defined the word "entitled" in its policy. We note that it has a section entitled "Definitions" in its policy and "entitled" is not one of the words it chose to define. Ohio Casualty could also have listed persons without a driver's license as an additional exclusion. The clause we are now interpreting is number 11 of 12 separate exclusions. Unlicensed drivers could have been specifically set forth as exclusion number 13. This was not done.

Accordingly we find that "entitled" as it is used in the clause at issue is ambiguous. As such, the provision is to be construed against the insurer, who was the drafter of the agreement. *Standard Venetian Blind Co., supra.* As applied to these facts we then agree with the trial court that it is "sufficient to avoid Ohio Casualty's exclusion that Brian Stuck have had a reasonable belief that he had the permission of the owner or a person in lawful possession of the Royer vehicle." Opinion 11/17/87 at 5. The trial

court's charge was not in error. We find no merit to appellant's first argument.

In issue two appellant contends that the policy exclusion applies as a matter of law. It argues that:

no reasonable man would believe that he had the right to operate a motor vehicle when he was unlicensed, knew it was illegal, never drove the vehicle before, had very limited operating experience, another operator was present and no emergency situation existed.

Brief of appellant at 12. Thus appellant concludes there was no jury issue on this question. This position seems contrary to that taken by counsel for Ohio Casualty at trial. Following the close of plaintiff's case-in-chief it was plaintiffs' (State Farm and Stuck's) counsel who expressed the view that the interpretation of the policy was a question of law, that the Court should rule as a matter of law on the issue and there was no issue to be submitted to the jury. Ohio Casualty took the position that there was a jury question. Specifically, counsel argued that irrespective of how the court charged on the meaning of entitle, there remained a jury question as to the reasonable belief. *See* N.T., Jury Trial 6/26/86 at 31–32. Appellant cannot successfully advance a new theory of relief on appeal, different from those raised in the trial court. *Kemp v. Qualls*, 326 Pa.Super. 319, 473 A.2d 1369 (1984). This theory is not only new but contrary to that raised at trial. Additionally, in light of our finding that "entitlement" consists of permission of the owner or lawful possessor, there was a jury question about Stuck's reasonable belief.

Issues three and four are interrelated and will be discussed together. In issue three, appellant contends that the policy construction charge and opposing counsel's summation argument were unfairly prejudicial to Ohio Casualty. At one point during its lengthy and detailed charge the court made a two sentence reference to the rule that provisions in insurance contracts are strictly construed against the insurance company. In closing argument, counsel for State Farm and Stuck made reference to the same

rule and argued that if Ohio Casualty meant to exclude unlicensed drivers they should have written such a provision into their policy. Counsel for State Farm and Stuck also argued that Ohio Casualty's proposed interpretation of the policy was contrary to certain public policy considerations. Finally, appellee's counsel contrasted the liability coverage exclusion with the personal injury protection exclusion in the same policy. Ohio Casualty now argues that the above statements of the court and opposing counsel were inappropriate or improper and prejudiced Ohio Casualty. .

In argument four Ohio Casualty again directs this Court's attention to the summation of counsel for State Farm wherein counsel remarked that the insurance coverage would benefit not only Stuck but also those people injured as a result of the accident. Ohio Casualty contends that this remark along with the points raised in argument three prejudiced Ohio Casualty and resulted in a verdict based upon sympathy and prejudice.

We have carefully reviewed the remarks and charge cited by counsel. We have also reviewed the summation of State Farm and the judge's charge in their entirety. With respect to the remarks made during closing argument, counsel for Ohio Casualty asked the trial court to give correcting instructions. The court gave such instructions and cautioned the jury to limit its deliberations to the facts at issue. The court explained to the jury that they were not to be concerned with the accident that occurred, with the injured parties or with the fact that there may be more insurance money available. The trial court is in a better position than we to observe the atmosphere at trial and determine whether a statement made by counsel had a prejudicial effect on the jury. *Clark v. Hoerner,* 362 Pa.Super. 588, 525 A.2d 377 (1987). Our supreme court has stated that:

> [i]n reviewing a trial judge's charge, the proper test is not whether certain portions taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to

determine whether or not error was committed and whether that error was prejudicial to the complaining party.

*Reilly by Reilly v. Southeastern PA Transportation Authority,* 507 Pa. 204, 231, 489 A.2d 1291, 1305 (1985). In applying these principles to the concerns appellant raises in issues three and four we find that the court's charge was proper and adequately dissipated any prejudicial effect appellees' counsel's remarks may have had on the jury. While the court did not give a curative instruction on each point complained of by appellant, the trial judge was in a better position than we to fashion a remedy. We find no error in that court's decision. Whether or not the portion of the court's charge relating the strict interpretation rule was improper, these were only two short sentences of a charge ten pages long in the written transcript. Its impact was slight, in light of the rest of the charge, and merits no relief. In summary, appellant fails to persuade us that either opposing counsel's remarks or the court's charge merit a new trial. We are similarly unpersuaded that the verdict was based on sympathy and prejudice.

Finding no merit to appellant's issues we affirm the judgment.

Appeal at Number 596 Harrisburg 1987 is quashed. With respect to the appeal at Number 651 Harrisburg 1987 the judgment is affirmed.

MONTEMURO, J., files a concurring and dissenting Opinion.

MONTEMURO, Judge, concurring and dissenting:

Although I would concur in the majority's treatment of the procedural issue, I would strongly dissent as to the substantive matters in this case. As is correctly pointed out, "The task of interpreting a contract is generally performed by a Court rather than by a jury." *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 304, 469 A.2d 563, 566 (1983). Here, in regard to the single crucial question in the case, that is whether

appellee Stuck had a reasonable belief in his own entitlement to drive the vehicle, the trial Court specifically instructed the jury to undertake this function. (N.T. 24) Because the instruction directly contradicts Pennsylvania law, this portion may not be isolated from the remainder of the charge as it irremediably taints the whole, and fails to offer proper guidance to the jury in its deliberations.

Further, this contract of automobile insurance does not contemplate coverage for the deliberate perpetration of an illegality, as is clear from the reasonableness requirement. Had appellant's policy merely referred to the insurability of permissive users as did the agreement in *Federal Kemper Insurance Co. v. Neary*, 366 Pa.Super. 135, 530 A.2d 929 (1987), there would be no difficulty in finding coverage for Stuck. *See* Kelly, P.D., *Blashfield Automobile Law and Practice*, Vol. 8, § 321.5 (1987). However, the clause here under examination speaks of reasonable belief, a phrase which implies the exercise of sound judgment. Insofar as the test for such a belief is concerned, it "takes into account a variety of circumstances, including the borrower's age, personality, and social milieu, and the effect of such attendant influences on his judgment and mind as may be credibly discerned from the proofs." *Miller v. U.S.F. & G. Co.*, 28 D. & C.3d 389 (1983).

At the time of the accident Brian Stuck was 23 years old and a high school graduate. He admitted, both in deposition and at trial, to knowledge that it was illegal to operate a motor vehicle without a license, and that his prior driving experience had been limited. Although, given all these factors, it is remotely possible that Stuck thought himself "entitled," that is, empowered by permission of the owner to operate the car simply by virtue of having been handed the keys, that conclusion involves more wishful thinking than reasonableness. Such judgment as it demonstrates is neither sound nor rational since it endows the (putative) teenage owner of an automobile with the authority to permit an activity, driving without a license, which the state clearly and specifically forbids.

The majority also finds that there is ambiguity in the concept of entitlement sufficient to require an express exclusion of unlicensed drivers from coverage. From the dictionary definitions and usage of the word in the policy, I would find no lack of clarity. Moreover, within the context of this case, the specifics of entitlement matter less than Stuck's knowledge that he was prohibited by law from operating *any* automobile. We therefore arrive where we began, with the question of reasonableness.

I would reverse.