JUDITH COKER COLEMAN NEWELL v. NATIONWIDE MUTUAL INSURANCE COMPANY, STATE CAPITAL INSURANCE COMPANY, MICHAEL BLACKMON AND ROBERT LEE BLACKMON

No. 282A91

(Filed 30 July 1993)

1. **Insurance §§ 598, 1175 (NCI4th) — automobile liability insurance — son forbidden to use vehicle — entitlement exclusion**

The insured's son was excluded from coverage under an automobile liability policy while driving the insured's vehicle by the "entitlement" exclusion of the policy, even though he was a "family member" within the meaning of the policy, where the policy provided in the exclusion section that liability coverage was not provided for "any person . . . 8. Using a vehicle without a reasonable belief that that person is entitled to do so," and the uncontradicted forecast of evidence showed as a matter of law that the son could not have had a reasonable belief that he was entitled to use his father's vehicle in that his driver's license had been permanently revoked for a previous driving while impaired conviction, he had been expressly forbidden by his father and stepmother to use any of the father's vehicles while living in his father's home, and on the night of the accident he was again charged with driving while impaired. The words "any person" as used in the exclusion section of the policy are not ambiguous and encompass the named insured, a family member or a third party unless express exceptions in the policy provide otherwise.

**Am Jur 2d, Automobile Insurance §§ 254 et seq.**

2. **Insurance § 499 (NCI4th) — automobile liability insurance — entitlement exclusion — no prohibition by Financial Responsibility Act**

The public policy goals of the Financial Responsibility Act did not preclude application of the entitlement exclusion of an automobile liability policy where plaintiff conceded that the Act itself provided no mandatory coverage to the tortfeasor because he was not driving the vehicle with the insured's permission and he was not in lawful possession of the vehicle at the time of the accident. N.C.G.S. § 20-279.21(b)(2).

**Am Jur 2d, Automobile Insurance §§ 28 et seq.**

NEWELL v. NATIONWIDE MUT. INS. CO.

[334 N.C. 391 (1993)]

On appeal pursuant to N.C.G.S. § 7A-30(2), and on discretionary review of additional issues pursuant to N.C.G.S. § 7A-31, from the decision of a divided panel of the Court of Appeals, 102 N.C. App. 622, 403 S.E.2d 525 (1991), affirming summary judgment entered in plaintiff's favor by R. G. Walker, Jr., J., on 13 November 1990 in Superior Court, Randolph County. Heard in the Supreme Court on 13 March 1992.

*O'Briant, O'Briant, Bunch, Whatley & Robins, by Lillian B. O'Briant and Thomas D. Robins, for plaintiff-appellee.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Joseph R. Beatty, for defendant-appellant Nationwide.*

EXUM, Chief Justice.

On 9 February 1987 plaintiff was injured in an automobile accident allegedly caused by the negligence of Robert Lee Blackmon, who was operating a 1977 Ford pickup truck owned by his father Michael Blackmon. Nationwide had issued an automobile liability policy to Michael Blackmon and wife which contained, among other exclusions, the following: "We do not provide Liability Coverage for any person . . . 8. Using a vehicle without a reasonable belief that that person is entitled to do so." Nationwide, contending that Robert Blackmon was operating the vehicle without a reasonable belief that he was entitled to do so, denied liability coverage. Plaintiff, contending the exclusion has no application to Robert Blackmon because he is a family member of the named insured, brings this declaratory judgment action to determine the coverage issue. The question to be determined is the application of this exclusion, sometimes called the "entitlement" exclusion, in light of the facts and policy provisions before us.

Both the Superior Court and the Court of Appeals concluded the exclusion had no application. We disagree and reverse.

Plaintiff brought this declaratory judgment action on 13 February 1989 seeking a declaration of the rights, duties and obligations of defendant Nationwide under its policy issued to the Blackmons. Plaintiff also joined defendant State Capital, seeking

a declaration of rights under the uninsured motorists (UM) coverage of an automobile policy which State Capital issued to plaintiff.[1]

On 30 August 1989 defendant State Capital moved for summary judgment; Nationwide opposed the motion. The trial court granted summary judgment in State Capital's favor, specifically concluding that defendant Robert Blackmon was insured by the Nationwide' policy. The trial court further concluded that there was no genuine issue of material fact that Robert Blackmon (1) was the son of Michael Blackmon, (2) was a resident of his father's household at the time of the accident with plaintiff, and (3) was therefore a covered person under the Nationwide policy which was in full force and effect at the time of the accident.

The next day, 1 November 1989, plaintiff moved for summary judgment. In response, defendants Nationwide and Michael Blackmon moved jointly for summary judgment. On 14 November 1989 the trial court granted plaintiff's motion for summary judgment against Nationwide, once again determining that the Nationwide policy insured the defendant tortfeasor. The trial court also denied the summary judgment motion of defendants Nationwide and Michael Blackmon.

Defendant Nationwide appealed from these rulings in plaintiff's favor. The Court of Appeals affirmed. We now reverse, concluding that on the forecast of evidence at the summary judgment hearing, which included the Nationwide policy itself, the Nationwide policy provides no liability coverage to the alleged tortfeasor, Robert Blackmon.

At the respective summary judgment hearings the trial court had before it not only the automobile insurance policies issued, respectively, to plaintiff by State Capital and to Mr. and Mrs. Blackmon by Nationwide, but also separate affidavits from the two elder Blackmons. Michael Blackmon's affidavit stated unequivocally that his son, Robert Blackmon, was "told . . . that he was not to drive any of my vehicles. . . . I knew that Robert Lee Blackmon's driver's license had been permanently revoked. Both my wife [Nan Blackmon] and I had told him that he could

---

1. On the same date, plaintiff brought a separate tort action against the individual defendants. The two insurers and defendant Robert Blackmon filed answers individually, and on 19 April 1989 defendant Michael Blackmon moved to dismiss the action against him. This action is not before us.

not drive our vehicles." Likewise, Nan Blackmon, Robert Blackmon's stepmother, stated in her own affidavit that

> I had told Robert Lee Blackmon, and I heard my husband tell Robert Lee Blackmon during the time Robert Lee Blackmon lived with us from the middle of January, 1987, until February 9, 1987, that he was not to drive any of our vehicles. Both my husband and I knew that Robert Lee Blackmon's driver's license had been permanently revoked.

Plaintiff failed to present any evidence at the summary judgment hearing contrary to the affidavits of Mr. and Mrs. Blackmon and has conceded in her brief that Robert Blackmon was not driving his father's vehicle with either the express or implied permission of his father and stepmother.

Other evidence before the trial court showed that Robert Blackmon, who was twenty years old at the time of the accident, was, as a result of the accident and the investigation which followed, convicted of driving while impaired and driving while his license was revoked. This was his second driving while impaired offense in less than two years.

Nationwide's policy issued to the elder Blackmons provided liability coverage for the named insureds, Michael Lacy Blackmon and Nan Brigman Blackmon, the alleged tortfeasor's father and stepmother. The "Insuring Agreement" for the policy's liability coverage, found in Part B of the policy, states:

> "We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident. . . . 'Covered person' as used in this Part means:
>
> 1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

(Bold in original.) In the Definitions section at the beginning of the policy, "[f]amily member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household."

Part B of the policy also contains certain exclusions. The "EXCLUSIONS" section of Part B provides:

> We do not provide Liability Coverage for *any person*:

1. Who intentionally causes bodily injury or property damage.

This exclusion applies only to damages in excess of the minimum limit required by the financial responsibility law of North Carolina.

. . . .

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the business or occupation of:

   a. selling;

   b. repairing;

   c. servicing;

   d. storing; or

   e. parking

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion does not apply to the . . . use of **your covered auto** by:

   a. you;

   b. any **family member**; or

   c. any partner, agent or employee of you or any **family member**.

8. *Using a vehicle without a reasonable belief that that person is entitled to do so.*

(Bold in original; italics added.)

Throughout these proceedings, Nationwide has contended that Michael Blackmon's son, Robert, was not insured under its policy issued to the elder Blackmons for two reasons. First, Nationwide has argued that Robert Blackmon was not a "covered person" under the policy because he was not a "resident of [his father's] household" pursuant to the policy's definition of "family member." Under the policy, a "covered person" is defined as including "You [the named insured] or any **family member** . . . ." (Emphasis in policy.) Because, Nationwide argues, there are genuine issues of material fact to

be resolved on the issue of Robert's *intent* to reside in his father's house and, therefore, on whether Robert was a resident of the named insured's household under the terms of the policy, summary judgment was improperly granted for plaintiff on these issues.

[1] Second, Nationwide contends that Robert Blackmon was specifically and unambiguously excluded from coverage by Exclusion 8, the entitlement exclusion, because he was, as a matter of law, using the vehicle in question "without a reasonable belief that [he was] entitled to do so." Agreeing with this second contention, we need not discuss, and hazard no opinion, as to the validity of Nationwide's first argument. We assume for purposes of this opinion only that Robert Blackmon was a "family member" within the meaning of the policy.

We note, too, that plaintiff has conceded that the provisions of N.C.G.S. § 20-279.21(b)(2) of the Financial Responsibility Act do not afford mandatory minimum coverage for Robert Blackmon and that "Nationwide's liability must be measured by the terms of the policy." Plaintiff Appellee's New Brief, p. 5. N.C.G.S. § 20-279.21(b)(2) provides that an "owner's policy of liability insurance: . . . (2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, or any other persons in lawful possession . . . ." Plaintiff makes no argument that Robert Blackmon was operating his father's vehicle with his father's permission or that he was in lawful possession of the vehicle at the time of the accident.

We have previously upheld in principle the entitlement exclusion in an automobile liability policy in a case where the alleged tortfeasor was operating a vehicle without a driver's license. *Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.*, 326 N.C. 771, 392 S.E.2d 377 (1990). However, we held that summary judgment in the liability insurer's favor was improper where the tortfeasor, Mr. Slater, was directed to use the vehicle by an employee of the vehicle's owner, the named insured. Writing for a unanimous court, Justice Frye stated that the tortfeasor's testimony

> raises a question of whether he reasonably believed under the circumstances that he was entitled to drive the truck. Although Slater answered in the negative when asked if he believed he was entitled to operate the truck, he qualified his answer by giving as a reason the fact that he was driving

**NEWELL v. NATIONWIDE MUT. INS. CO.**

[334 N.C. 391 (1993)]

without a license. A jury might well conclude that while he knew that it was "wrong to be driving without a license regardless of what goes on," he nevertheless believed he was entitled to drive the truck under the circumstances because he believed that he had the permission of the owner to do so. . . . *Slater's reasonable belief is a question of fact to be determined by a jury.* . . .

*Id.* at 776-77, 392 S.E.2d at 380 (emphasis added).

In the present case, however, based on the forecast of evidence below, we conclude as a matter of law that Robert Blackmon could not have had a reasonable belief that he was entitled to use his father's vehicle. Not only was Robert's driver's license under revocation by the North Carolina Division of Motor Vehicles for a previous driving while impaired conviction, the Record also contains separate affidavits of his father and stepmother stating that Robert was expressly forbidden to use *any* of his father's motor vehicles while living in his father's home. There is no forecast of evidence to the contrary. The Record further discloses, without contradiction, that, on the night of the accident with plaintiff, Robert was once again charged with driving while impaired. On this forecast of evidence there is simply no genuine issue of material fact as to whether Robert Blackmon could have had a reasonable belief that he was entitled to use his father's vehicle. The forecast shows conclusively that he could not have had such a belief.

In its opinion below, the Court of Appeals declined to decide whether Robert Blackmon was using his father's vehicle "without a reasonable belief that [he was] entitled to do so." *Newell v. Nationwide Mut. Ins. Co.*, 102 N.C. App. 622, 627, 403 S.E.2d 525, 528 (1991). After concluding that Robert Blackmon was a "resident" of his father's household and included within the policy's definition of a "family member," the Court of Appeals held that Robert was a "covered person" under the terms of the policy. The Court of Appeals further held that, although the Exclusions section by its terms applies to "any person," none of the exclusions, including the entitlement exclusion, applies to a family member. *Id.*

Relying on *Economy Fire & Casualty Co. v. Kubik*, 142 Ill. App. 3d 906, 492 N.E.2d 504 (1986), and *State Auto. Mut. Ins. Co. v. Ellis*, 700 S.W.2d 801 (Ky. Ct. App. 1985), the Court of Appeals found coverage for Robert Blackmon as a "family member" because the court thought the policy's use of that term and the

terms "covered person" and "any person" creates an ambiguity as to whether the term "any person" as used in the Exclusion section applies to family members. Applying the familiar principle that ambiguities in the language of an insurance policy will be resolved in favor of coverage, *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970), the Court of Appeals held that the term "any person" did not apply to family members. The court stated:

> [T]he Nationwide policy uses "covered person," "family member," and "any person" selectively throughout the policy and more specifically in the Exclusions section of the policy. . . . Under the express terms of the policy, "any person" is not an "all inclusive" term; *it does not include family members*. The policy establishes mutually exclusive classes. The selective use of these terms creates an ambiguity.

*Newell*, 102 N.C. App. at 629, 403 S.E.2d at 529 (emphasis added).

We think the cases relied on by the Court of Appeals are clearly distinguishable. The policy which the Illinois court considered in *Kubik* was different from the Nationwide policy before us. The policy in *Kubik* used the terms "any person" and "family member" selectively within the Exclusions section itself, implying, as the Illinois court noted,

> that some exclusions are applicable to only a "family member," some exclusions are applicable to only the class comprising "any person" (a group separate and distinct from a "family member"), and some exclusions are applicable to both a "family member" and "any person."

> . . . . Exclusion #11 [the entitlement exclusion] does not bar, as several other exclusions specifically do, coverage for a family member. . . . As a result . . . an ambiguity is created with regard to whether a "family member" is barred from coverage by exclusion #11."

*Kubik*, 142 Ill. App. 3d at 910, 492 N.E.2d at 507.

The Kentucky court in *Ellis*, also relied on by the Court of Appeals, simply concluded that the policy's lack of guidance as to how the terms of the entitlement exclusion should be applied created an ambiguity in its application which should be resolved in favor of not applying the exclusion in that case. The *Ellis* decision

**NEWELL v. NATIONWIDE MUT. INS. CO.**

[334 N.C. 391 (1993)]

is of little help since we have already sustained in principle the validity of the entitlement exclusion. *See Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.*, 326 N.C. 771, 392 S.E.2d 377.

Our examination of the Nationwide policy convinces us that there is no ambiguity in the term "any person" as it is used in the Exclusions section even when the use of this term is considered with the use of the terms "family member" and "covered person." The term "covered person" never appears in the Exclusion section, and the term "family member" appears quite clearly only for the purpose of defining an exception to one of the exclusions.

Within the Exclusions section at least two of the exclusionary categories, the first and the sixth, plainly show that family members, and even the named insureds, *are* contemplated by the use of the term "any person."

In the first exclusion listed, the policy states that coverage is not provided for one who "intentionally causes bodily injury or property damage." Following the rule that liability insurance coverage is generally not provided for anyone who intentionally commits injurious acts, this exclusion is obviously intended to include not only family members of named insureds but also named insureds themselves. This exclusion, however, by its terms and in recognition of case law, *see Swain v. Nationwide Mut. Ins. Co.*, 253 N.C. 120, 116 S.E.2d 482 (1960), does not apply to minimum coverages which may be mandated by the Financial Responsibility Act.

The sixth exclusion listed provides even more support for our conclusion that no ambiguity exists with regard to whether the term "any person" applies to family members. This exclusion by its terms "does not apply to the . . . use of **your covered auto** by: . . . any **family member**." (Emphasis in original.) That the policy expressly provides for a family member exception to the sixth exclusion compels the conclusion that other exclusions which do not contain a family member exception apply to family members.

We are also persuaded by a well-reasoned decision of the Maryland Court of Special Appeals, *Gen'l Accident Fire & Life Assurance Co. v. Perry*, 75 Md. App. 503, 541 A.2d 1340 (1988), in which the Maryland court conducted an exhaustive review of the decisions of other states on whether the entitlement exclusion applies to family members. Construing a policy almost identical

to the one before us, the *Perry* court found that the entitlement
exclusion does indeed apply to family members of the named in-
sured. The *Perry* court stated:

> Appellee argues "that an ambiguity may exist with respect
> to 'family member' and 'any person' as used in the policy exclu-
> sion A.8 [which is, we note, the same exclusion as the one
> at issue here]." Appellee's argument is based on the holding
> of the court in *Economy Fire & Casualty v. Kubik*, 97 Ill.Dec.
> [68], 72, 492 N.E.2d at 507, 508. The reasoning of the *Kubik*
> court necessarily depended upon the policy it was construing.
> The *Kubik* court concluded that the insurer's policy was am-
> biguous because the policy's terms "family member" and "any
> person" were used in the policy's exclusions "in such a way
> as to create the impression that they refer to mutually ex-
> clusive classes." *Id.*, 97 Ill.Dec. at 71, 492 N.E.2d at 507. The
> *Kubik* court pointed out that some of the exclusions referred
> only to a "family member", others referred only to the class
> constituting "any person" and still other exclusions applied
> to both classes. The *Kubik* court concluded that because the
> exclusion at issue did not include the term "family member",
> "it is apparent that at the very least, an ambiguity is created
> with regard to whether a 'family member' is barred from
> coverage. . . ." *Id.* In *Georgia Farm Bureau*, 350 S.E.2d at
> 326, the court construed a policy identical to the policy at
> issue in the case *sub judice*, *see* note 6, *supra*. The *Georgia
> Farm Bureau* [*v. Fire & Casualty Ins. Co.*, 180 Ga.App. 777,
> 350 S.E.2d 325 (1986)] court rejected the identical argument
> made by appellee here. That court said, "[c]overage of all types
> is set forth in one part and all the exclusions are grouped
> separately. The language 'any person' refers to each of the
> nine exclusions listed, including the named insured." *Id.*, 350
> S.E.2d at 326. We note that the policy at issue in *Kubik* and
> the policy at issue in *Georgia Farm Bureau* were different,
> structurally. We hold that there is *no* ambiguity in the exclu-
> sion *sub judice* based on the "vagueness created by the manner
> in which [the insurer] use[d] the term 'family member' and
> 'any person' interchangeably throughout the policy's exclusions."
> *Cf. Kubik*, 97 Ill.Dec. at 71, 492 N.E.2d at 507.

*Perry*, 75 Md. App. at 521-22, 541 A.2d at 1349 (emphasis in original).
The language in the Nationwide policy before us is nearly identical

also to the language in the policy considered in *Georgia Farm Bureau*, upon which *Perry* relies.

To the extent that plaintiff relies on the decisions in *Kubik* and other cases to support her position that the Exclusions section of the Nationwide policy does not include family members, we have satisfied ourselves that those cases are either distinguishable or unpersuasive.

Since the words "any person" as used in the Exclusions section of Nationwide's policy are not ambiguous and have no technical or otherwise defined meaning in the policy itself, they should be accorded their plain, everyday meaning. *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 246 S.E.2d 773 (1978). As a result, "any person" encompasses *any* person, whether that person is the named insured, a family member or a third party, unless express exceptions in the policy, as in the sixth exclusion, provide otherwise.

[2] Plaintiff also argues that the "broad public policy goals" of the Financial Responsibility Act operate to nullify any exclusionary language in the Nationwide policy which contravenes those stated goals. On the facts here we disagree. The public policy goals of the Financial Responsibility Act apply only when the Act itself is being construed or when determinations are being made regarding the extent to which the Act as to its mandatory minimum coverages may override conflicting insurance policy provisions. Plaintiff has conceded that the Act itself provides no mandatory coverage to the tortfeasor here; this concession forecloses plaintiff's argument, as we understand it, on this point.

Neither do the cases relied on by plaintiff support this argument. The cases are *Nationwide Mut. Ins. Co. v. Aetna Life and Casualty Co.*, 283 N.C. 87, 194 S.E.2d 834 (1973); *Nationwide Mut. Ins. Co. v. Roberts*, 261 N.C. 285, 134 S.E.2d 654 (1964); and *Allstate Ins. Co. v. Webb*, 10 N.C. App. 672, 179 S.E.2d 803 (1971). It is true that in all of these cases the courts refused to apply exclusionary provisions in insurance policies which conflicted with mandatory minimum coverage requirements of the Financial Responsibility Act. But in all the cases the courts first determined that the Financial Responsibility Act afforded mandatory coverage to the tortfeasor. In *Aetna* the tortfeasor was operating the motor vehicle with the permission of the named insured; in *Roberts* and *Webb* the tortfeasor was the named insured. Because of these facts in these cases, facts which are not present here, the Act

afforded mandatory minimum coverage despite any conflicting exclusionary provisions in the policies under consideration.

For the reasons given, the decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for remand to the trial court for entry of judgment for Nationwide on the coverage issue.

REVERSED AND REMANDED.

Justice Parker did not participate in the consideration or decision of this case.