FARM AND CITY INSURANCE COMPANY and Gary M. Osweiler, Appellants,

v.

Charles K. GILMORE, Jeri Gilmore, Lynette Gilmore, A Minor, Heidi L. Gilmore, A Minor, Clint J. Schossow, Frank Tuma, and Bradden J. Tuma, A Minor, Appellees.

No. 94–1076.

Supreme Court of Iowa.

Oct. 25, 1995.

David A. Scott of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellants.

Richard J. Barry of Montgomery, Barry & Bovee, Spencer, for appellees.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

Farm and City Insurance Company (Farm & City) appeals a declaratory judgment ordering insurance coverage for personal injuries sustained by passengers in a single-vehicle accident. The accident occurred while the vehicle owned by Gary M. Osweiler (Gary) was being driven by Bradden J. Tuma (Tuma). Farm & City contends there is no liability coverage under an insurance policy it issued to Gary for two reasons: (1) The driver, Tuma, is not covered because of an exclusion in the policy; and (2) the vehicle owner, Gary, is not liable because the vehicle was being driven without his consent. The district court rejected Farm & City's contentions and declared both Tuma and Gary had insurance coverage under the circumstances of the case and the terms of the policy. We affirm.

## I. *Background Facts and Proceedings.*

Gary owned a Ford Thunderbird covered by a Farm & City insurance policy. In the fall of 1991 he left the vehicle at his mother's farm to have it repaired and borrowed her car to go back to college in Des Moines, Iowa. Gary's younger brother, Brian Osweiler (Brian), started driving the vehicle regularly in January 1992 with Gary's knowledge and consent.

On the evening of February 21, 1992, Brian was driving the vehicle while Tuma, Clint J. Schossow, Heidi L. Gilmore, and Lynette Gilmore were passengers. The boys were drinking beer and Brian was not feeling well. Brian asked Schossow to drive but he refused. One of the Gilmore girls offered to drive but Brian asked Tuma to drive. At the time, Tuma was fifteen years old and his school driving permit was under concurrent revocation and suspension because of various motor vehicle violations. While Tuma was driving, he lost control of the vehicle on a curve, went into a ditch, and hit a tree. The Gilmore girls and Schossow were injured. Brian pled guilty to a charge of permitting an unlicensed person to drive the vehicle.

Farm & City filed a petition requesting the district court to enter judgment declaring that there was no coverage under Farm & City's policy for the claims resulting from the accident. The case was tried to the court as a law action. The court found Tuma was operating the vehicle with a reasonable belief that he was entitled to do so and with the implied permission or consent of Gary. Consequently, the court entered judgment that the Farm & City insurance policy provides coverage for both Tuma and Gary for the accident. Farm & City appeals.

## II. *Scope of Review.*

Our review is for correction of errors at law. Iowa R.App.P. 4. The district court's findings of fact are binding if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

### III. *Coverage for Tuma.*

It is undisputed that Tuma is an "insured" under the insurance policy. Farm & City contends, however, there is no liability coverage for Tuma because of a policy exclusion stating coverage is not provided for any person "[u]sing a vehicle without a reasonable belief that that person is entitled to do so." Farm & City urges that, as a matter of law, Tuma could not have had a reasonable belief that he was entitled to drive Gary's vehicle because he was unlicensed, underage, had previous driving convictions, and had consumed four bottles of beer.

■ Insurance policy exclusions are strictly construed against the insurer. *Kalell v. Mutual Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 867 (Iowa 1991); *IMT Ins. Co. v. Amundsen*, 376 N.W.2d 105, 107 (Iowa 1985). Although coverage clauses are given a broad and comprehensive meaning, exclusionary clauses are given a narrow or restrictive construction. *Grinnell Mut. Reinsurance Co. v. Employers Mut. Casualty Co.*, 494 N.W.2d 690, 693 (Iowa 1993); *Kalell*, 471 N.W.2d at 867. The insurer must define exclusions in clear and explicit terms and bears the burden of proving the applicability of an exclusion. *West Bend Mut. Ins. Co. v. Iowa Iron Works*, 503 N.W.2d 596, 598 (Iowa 1993); *Kalell*, 471 N.W.2d at 867; *First Newton Nat'l Bank v. General Casualty Co.*, 426 N.W.2d 618, 628 (Iowa 1988). If exclusionary language is not defined in the policy, we give the words their ordinary meaning. *West Bend*, 503 N.W.2d at 599; *Kalell*, 471 N.W.2d at 867; *Amundsen*, 376 N.W.2d at 107. We will determine "what the insured as a reasonable person would understand the policy to mean, rather than what the insurer actually intended." *First Newton*, 426 N.W.2d at 628. An exclusion that is clear and unambiguous must be given effect. *Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 776 (Iowa 1993). If an exclusion is fairly susceptible to two reasonable interpretations, the exclusion is ambiguous and the interpretation most favorable to the insured will be adopted. *A.Y. McDonald Indus. v. I.N.A.*, 475 N.W.2d 607, 618–19 (Iowa 1991); *Amundsen*, 376 N.W.2d at 107.

■ The exclusionary language, "using a vehicle without a reasonable belief that that person is entitled to do so," contain words or phrases not defined in the Farm & City policy. There is no definition for the term "entitled" nor is there a definition for the phrase "reasonable belief." Applying the term "entitled" to the facts of this case leads to more than one reasonable interpretation. "Entitled" could mean a legal right or authority to drive under the applicable law. Under this definition, a person must have a valid driver's license to reasonably believe that he is entitled to use a vehicle. Another equally reasonable interpretation is "consent" or "permission" from the vehicle owner or apparent owner. Finally, "entitled" could require both consent and legal entitlement.

We find that the term "entitled" in the policy exclusion is ambiguous and we adopt the interpretation most favorable to the insured. Accordingly, coverage is excluded when a person is using a vehicle without a reasonable belief that he or she had permission of the owner or apparent owner to do so. If Farm & City intended to exclude coverage for unlicensed drivers, it could have easily done so in clear and explicit terms. *See* 6C J. Appleman, *Insurance Law and Practice* § 4401, at 278 (1979).

Other courts addressing identical exclusionary language under similar facts also found the exclusion to be ambiguous and adopted a similar interpretation. In *State Farm Mutual Automobile Insurance Co. v. Moore*, 375 Pa.Super. 470, 544 A.2d 1017, 1018 (1988), the daughter of the vehicle owner gave permission to an unlicensed friend to drive the vehicle. The insurer argued the term "entitled" in the exclusion means the person must have the owner's permission and a valid driver's license. *Id.* 544 A.2d at 1019. The court interpreted the exclusion to mean a person can reasonably believe he is entitled to use a vehicle once permission is obtained from the owner or a person in lawful possession of the vehicle. *Id.* at 1020. In *Canadian Indemnity Co. v. Heflin*, 151 Ariz. 257, 259, 727 P.2d 35, 37 (Ct.App.1986), the insurer argued that the driver could not have reasonably believed that he was entitled to drive the vehicle because he was unlicensed,

underage, and speeding. The court interpreted the exclusion to mean "coverage was excluded only where the insured was driving a non-owned vehicle without a reasonable belief that he had the permission of the apparent owner." *Id.* at 258, 727 P.2d at 36. In *Safeco Insurance Co. v. Davis,* 44 Wash. App. 161, 721 P.2d 550, 551 (1986), a fourteen-year-old girl was given permission to drive a car by an acquaintance who regularly drove his parents' car to school. The court found that the unlicensed girl had a reasonable belief that she was entitled to drive the vehicle. *Id.* 721 P.2d at 553. *See also Cooper v. State Farm Mut. Auto. Ins. Co.,* 849 F.2d 496, 499 (11th Cir.1988) (under North Carolina law the legal right to drive is not a necessary prerequisite to establish a reasonable belief of entitlement under the exclusion); *Safeway Ins. Co. v. Holmes,* 194 Ga. App. 160, 390 S.E.2d 52, 54–55 (1989) (statute forbidding fifteen-year-old drivers to operate a vehicle unless accompanied by a licensed driver at least eighteen years old does not abrogate the fact a fifteen-year-old driver received permission to drive a vehicle from the appropriate source resulting in a reasonable belief that she was entitled to do so); *State Auto. Mut. Ins. Co. v. Ellis,* 700 S.W.2d 801, 802 (Ky.Ct.App.1985) (policy does not specify whether "entitled" means obtaining permission from the owner or whether a valid driver's license is also required); *Aetna Casualty & Surety Co. v. Nationwide Mut. Ins. Co.,* 326 N.C. 771, 392 S.E.2d 377, 380 (1990) (a person knowingly driving a vehicle without a driver's license may nevertheless have a reasonable belief that he was entitled to use the vehicle). *But see Safeway Ins. Co. v. Jones,* 202 Ga.App. 482, 415 S.E.2d 19, 20 (1992) (an unlicensed driver could not have reasonably believed that he was entitled to drive any vehicle regardless of whether he had permission to do so).

Other courts, also applying the exclusion to unlicensed drivers, have found the exclusion to be unambiguous by adopting a "state of the mind" approach. *See General Accident Fire & Life Assurance Corp. v. Perry,* 75 Md.App. 503, 541 A.2d 1340, 1348 (1988). These decisions, however, are distinguishable because the unlicensed drivers did not have proper permission to use the vehicle, while

here, Brian clearly granted Tuma permission to drive the vehicle. *See Cincinnati Ins. Co. v. Plummer,* 213 Ga.App. 265, 444 S.E.2d 378, 379 (1994) (unlicensed driver took her mother's car keys without permission and knew she did not have permission to drive the car); *Perry,* 541 A.2d at 1341 (unlicensed driver, who was co-owner of the vehicle with his mother, took the vehicle without his parents' permission onto a public highway); *Omaha Property & Casualty Ins. Co. v. Peterson,* 865 S.W.2d 789, 790 (Mo.Ct.App.1993) (unlicensed driver not only did not have the owner's permission to drive the vehicle, but believed the owner did not want her to drive the vehicle); *Newell v. Nationwide Mut. Ins. Co.,* 334 N.C. 391, 432 S.E.2d 284, 288 (1993) (driver's license had been permanently revoked and he was expressly forbidden to use any of his father's vehicles); *Omaha Property & Casualty Ins. Co. v. Johnson,* 866 S.W.2d 539, 540 (Tenn.Ct.App.1993) (unlicensed driver who was expressly forbidden to use his father's car took his father's car keys without permission).

The district court found that Tuma was driving the vehicle with a reasonable belief that he was entitled to do so. He was driving the vehicle with the permission and at the request of Brian. Tuma could reasonably believe that Brian, who had been driving the vehicle regularly for all of his transportation needs, had authority to permit him to drive the vehicle. Tuma had ridden in the vehicle with Brian on numerous occasions prior to the accident and had driven the vehicle earlier that night and on at least one prior occasion. Although Tuma knew he did not have a driver's license and his actions violated traffic laws, he also believed he not only was driving with the permission of the apparent owner of the vehicle, but was doing so at the specific request of Brian. The actual owner of the vehicle, Gary, never instructed Tuma not to drive the vehicle nor instructed Brian not to allow others to drive the vehicle. We find there is sufficient evidence to support the court's finding. Construing the exclusion strictly against the insurer, we hold that Tuma had a reasonable belief that he was entitled to use the vehicle.

## IV. *Coverage for Gary.*

█ The Farm & City policy provides coverage for damages "for which any 'insured' becomes legally responsible because of an auto accident." An owner of a motor vehicle becomes liable for damages done by the vehicle because of negligence of the driver when driven with the consent of the owner. Iowa Code § 321.493 (1993). Farm & City urges that Gary is not liable because his vehicle was being driven without his consent when the accident occurred.

█ When ownership of a vehicle is admitted, a rebuttable presumption is created that the vehicle was operated with the owner's consent. *Moritz v. Maack,* 437 N.W.2d 898, 900 (Iowa 1989); *Van Zwol v. Branon,* 440 N.W.2d 589, 591 (Iowa 1989). An owner's consent to use a vehicle may be either express or implied from the circumstances. *Moritz,* 437 N.W.2d at 900. The consent may be limited to the extent a permittee may allow a second permittee to use the vehicle. *Id.* at 901. If the owner grants broad, unrestricted consent to the first permittee, a factual determination must be made as to whether the consent includes an implied grant of authority to allow a second permittee to use the vehicle. *Id.; Van Zwol,* 440 N.W.2d at 591–92.

> The owner's consent to the use of an automobile by a second permittee, if not expressly provided, may be shown by the circumstances surrounding the original grant of permission, or by a course of conduct on the part of the owner consistent with the first permittee's grant of authority. If the owner denies that the second permittee operated the vehicle with his or her consent, consent may still be established by the owner's course of conduct inconsistent with this denial. Ultimately, the issue of consent turns on the particular facts and circumstances of each case.

*Id.* (citations omitted).

█ The district court determined that the initial grant of authority from Gary to his brother was broad enough to include an implied grant of authority to allow Tuma to use the vehicle. Brian was driving Gary's vehicle regularly with the knowledge and consent of Gary. Gary had given Brian broad permission to use the vehicle with no restrictions as far as a third party's use was concerned. Neither Gary nor Brian testified as to any restrictions that Gary had placed on his brother's use of the vehicle. We find sufficient evidence to support the district court's finding that Tuma was driving the Osweiler vehicle with the implied consent of Gary.

█ Farm & City urges that the family rules are relevant in determining whether implied consent existed. Kathy Vosika, the mother of Gary and Brian, testified that Brian was under family instructions not to let anyone else drive their cars. The evening of the accident she gave Brian the usual speech on rules consisting of "don't drink and drive, don't let anybody drive the car, and be in by 11:30 p.m." Although her admonitions are commended, she was not the owner of the Thunderbird. The family rules are irrelevant to what restrictions the owner of the vehicle, Gary, may have placed on his brother.

## V. *Exclusion of Prior Driving Convictions.*

█ Farm & City's final argument is the district court erred in excluding evidence of Tuma's previous driving offenses. Prior to the accident, Tuma had numerous driving convictions. Farm & City urges that these prior convictions are relevant to whether Tuma had a reasonable belief of entitlement to drive and are admissible under Iowa Rule of Evidence 404(b).

The district court excluded evidence of Tuma's previous driving convictions stating that the prejudice outweighed any probative value as to the details why Tuma's license had been revoked. *See* Iowa R.Evid. 403. The determination to exclude evidence under rule 403 rests within the sound discretion of the trial court. *Harris v. Jones,* 471 N.W.2d 818, 821 (Iowa 1991). The court properly considered Tuma's lack of a driver's license and the fact it had been suspended or revoked and weighed the evidence accordingly. The district court did not abuse its discretion in excluding evidence of Tuma's prior driving

convictions. Accordingly, we affirm the district court's declaratory judgment.

**AFFIRMED.**