Anthony VALENTI and Henrietta Valenti, h/w, Plaintiffs

v.

ALLSTATE INSURANCE CO., Defendant

No. CIV.A. 3:99–1234.

United States District Court, M.D. Pennsylvania.

Jan. 27, 2003.

John D. Nardone, Esquire, Kingston, PA, for plaintiffs.

Bonnie S. Stein, Esquire, Robert G. La-Bar, Esquire, Curtin & Heefner, Morrisville, PA, Joel Steinman, Esquire, Doylestown, PA, for defendants.

### MEMORANDUM AND ORDER

MANNION, United States Magistrate Judge.

Before the court is the plaintiffs' post trial motion pursuant to the provisions of Federal Rules of Civil Procedure 50 and 59. (Doc. No. 55)

This case arose from a fire that took place at plaintiffs' Pugh street rental property in Edwardsville, Pennsylvania. At the time of the fire, plaintiffs were insured by Allstate Insurance Co. Allstate declined to pay their claim stating that plaintiff Anthony Valenti had submitted a fraudulent claim in that he had arranged for the arson of the property. The case went to trial on December 11, 2001, after which the jury found in favor of the defendant Allstate on the plaintiffs' claim and additionally found in favor of the defendant Allstate on their counterclaim for insurance fraud pursuant to 18 Pa.C.S.A. § 4117.

The plaintiffs' make three (3) contentions in their post trial motions:

First, the court erred in its decision to deny the plaintiffs' motion *in limine* with regard to the testimony of Thomas Davis, Jr. because that testimony was highly prejudicial with little or no probative value;

Second, the court erred in its determination that the plaintiffs' insurance policy was joint with regard to plaintiffs Anthony and Henrietta Valenti; and,

Third, there was insufficient evidence for the jury to find that the plaintiff had committed insurance fraud.

### Standard of Review

The plaintiffs have filed the instant motion pursuant to Fed.R.Civ.P.50 (requesting judgment as a matter of law), or in the alternative, pursuant to Fed. R.Civ.P. 59 (requesting a new trial). In order to prevail on a motion for judgment as a matter of law pursuant to Rule 50(b), the movant "must show that the jury's findings, presumed or expressed, are not supported by substantial evidence, or, if they (are), that the legal conclusions implied (by) the jury's verdict cannot in law be supported by those findings." *LifeScan, Inc. v. Home Diagnostics, Inc.*, 103 F.Supp.2d 345, 350 (D.Del.2000), *aff'd*, 13 Fed.Appx. 940, 2001 WL 345439 (Fed.Cir.2001)(internal citations omitted). In reviewing the evidence, and the sufficiency thereof, the court is also required to afford the non-movant, here, the defendant as verdict winner, the benefit of all logical inferences that can be drawn from the evidence. In addition, it must resolve all conflicts in favor of the non-movant and view the record in a light most favorable to the non-movant. *Id.* at 350. Additionally, the court is not allowed to re-evaluate the credibility of witnesses, the weight of the evidence, and is not free to substitute its own interpretation of the evidence for that made by the jury. To the contrary, the court must make a determination of whether evidence exists in the record to reasonably support the jury's verdict. *Id.* (citing *Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1083 (3d Cir. 1995)). In pertinent part, Rule 59 states:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

The decision to grant or deny a new trial is committed to the sound discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). However, where the ground for a new trial is that the jury's verdict is against the clear weight of the evidence, the court should proceed cautiously, because such a ruling would, by its nature, supplant the court's judgment for that of the jury. *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993). A new trial should only be granted where the verdict results in a miscarriage of justice or shocks the conscience. *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir.1991).

### *Discussion*

### I. *Denial of Motion in limine*

The first issue raised by the plaintiffs is the court's denial of their motion *in limine*, allowing the testimony of Thomas Davis, Jr. Mr. Davis testified about a prior request from Anthony Valenti to burn down one of his rental properties. The plaintiffs argued, in their motion *in limine* (Doc. No. 29), that the evidence was both irrelevant pursuant to Fed.R.Evid. (FRE) 401 and more prejudicial than probative under FRE 403.

Federal Rule of Evidence 401 states: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

During the course of the trial, the defendant called Thomas Davis, Jr. to the stand.

Mr. Davis testified that he was familiar with Mr. Valenti, he had worked for, and rented from, him since 1987. (Doc. No. 74, p. 7) When he first began working for Mr. Valenti, he lived in an apartment over a bar on South Main Street, owned by Mr. Valenti. He continued to live at that location, renting from Mr. Valenti, until 1994.(*Id.*) During the time Mr. Davis lived at the South Main Street location, Mr. Valenti found out that the bar was going to be shut down and advised Mr. Davis he would be forced to move. (Doc. No. 74, p. 8) Mr. Davis lived with his mother, his sister, his wife and his two young children in that rental property owned by Mr. Valenti. (Doc. No. 74, p. 10) Mr. Davis' testimony was that in September 1994, after Mr. Valenti was aware that the bar and building would be shut down:

"He offered me—— the one time he offered me money to set fire to the place. And I told him that I would think about it. Then I told him I couldn't because I had two small kids at the time. And then he said if he would find somebody else, he would let me know when it would happen so I could get my family out."

(Doc. No. 74, p. 8)

Although the bar and building never burned down, they were shut down and Mr. Davis moved to Mr. Valenti's Pugh Street building, in October 1994.

During the trial, Mr. Valenti testified that not long before the fire, his Pugh Street property, had received citations for up to 300 bags of garbage in the basement of the building. (Doc. No. 73, p. 64) Approximately two and one-half weeks before the fire, the pipes in one apartment burst and that portion of the property was declared "uninhabitable" causing Mr. Davis to move out. (Doc. No. 73, p. 65) In fact, Mr. Valenti admitted to receiving a letter from the Edwardsville Borough concerning

the Pugh street property which read "It is our belief that this property is teetering on the edge of having so many continuing violations that it may be condemned and ruled unfit for human habitation." (Doc. No. 73, p. 98)

As a result of the above, Mr. Valenti inquired of his insurance company about coverage, believing that the property was only insured for $45,000.00. However, Mr. Valenti found out that the property was actually insured for $75,000.00. (Doc. No. 73, pp. 105–106) Two weeks later the building was burned to the ground.

In addition to Mr. Davis' testimony concerning the prior solicitation by Mr. Valenti, the defense called Frank Hodle to testify at trial. It appears that Mr. Hodle had worked for Mr. Valenti as a mechanic. According to the testimony, Mr. Hodle had been interviewed after the fire by Officer Bond of the Edwardsville Police Department. During that interview, Mr. Hodle stated that he had been asked by Mr. Valenti to set fire to the Pugh Street building. At trial, Mr. Hodle was unable to remember the substance of his statement to Officer Bond. According to the testimony, Mr. Hodle was the victim of a stroke at some point after the statement, but before this trial. On cross-examination, the plaintiffs' counsel offered their own statement, prepared by plaintiffs' former counsel and signed by Mr. Hodle, which purportedly contradicted and rescinded his statement to the Edwardsville Police concerning Mr. Valenti's solicitation to burn down the Pugh street building.[1] As such, the court allowed the jury to hear all testimony concerning Mr. Valenti's purported solicitations to commit arson, and decide whether the witnesses were credible or not credi-ble, as well as what weight, if any, to give the testimony. (Doc. No. 37, pp. 166–179).

Additionally, the defendants called Howard Perrego to the stand. Mr. Perrego also worked at a garage owned by Mr. Valenti and Mr. Perrego also lived at the Pugh Street address, owned by Mr. Valenti and subject of the fire. In his statement to the Edwardsville Police Department, Mr. Perrego said:

A. I worked at the garage at Tony's Auto Sales. I worked with Frank— did work with Frank and Tony and our own customers. I was in the garage area. I went to Tony's office to see Frank. I heard Tony ask Frank to burn a house. Frank said no. It was November. I worked at Tony's approximately three years. I knew Frank since my high school days. I heard nothing more about the fire. I went back to the garage to work on the vehicle. I didn't hear of anything else.

I spent a lot of time over my girlfriend's house. I wasn't there the night of the fire. I spent the night over my girlfriend's house. I heard about the fire the next morning. I went to the garage with Frank. I found out about it, about the fire. And when I arrived at the garage, Tony said he would cut in Frank when he—the insurance check. (Doc. No. 73, p. 207).[2]

Officer Bond also testified that he took the above statements from Frank Hodle and Howard Perrego, as part of his investigation into the January 20th fire of the plaintiffs' Pugh Street property. (Doc. No. 74 pp. 64–65)

---

1. Interestingly, it appeared that Mr. Hodle's memory became much better during cross-examination, as opposed to direct and redirect examination. (Doc. No. 73, pp. 166–178)

2. In this testimony, Perrego's reference to "Tony" refers to Anthony Valenti and "Frank" refers to Frank Hodle.

The court considered the similarity in circumstances, including the fact that Mr. Davis lived in both properties; Mr. Davis and Mr. Valenti had a long relationship; both properties were owned by Mr. Valenti; Mr. Valenti was aware of the upcoming condemnations and/or closing both at the South Main Street and Pugh Street properties; Mr. Davis did not appear to have a motive to lie; both parties stipulated that the Pugh Street property was destroyed by arson; the alleged solicitation by Mr. Valenti of Mr. Davis to "set fire" to the south main street property was only 5 or 6 years earlier; and, Mr. Davis' testimony would be subject to cross examination.

Additionally, the court considered the very similar circumstances of the statements and/or testimony of Frank Hodle, Howard Perrego and Officer Bond. In light of these circumstances, it is clear to the court that the prior solicitation was highly relevant, under FRE 401, on the issue of whether Mr. Valenti was directly involved in soliciting the arson of the Pugh Street property, as alleged by the defendant.

■ This however, still left the court with the decision of whether the evidence was more probative than prejudicial under FRE 403.

FRE 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

In carefully weighing the evidence, the court concluded that its probative value outweighed the prejudicial effect. As noted in the record:

"...I find that it is prejudicial. There's no question about that. But I do find that in this particular...case, that it is more probative than it is preju-

dicial.... specifically, while the plaintiff has argued that it happened six to eight years ago in the mid '90s, and, therefore, is also untimely... I don't find that six or eight years is an unusually long amount of time, considering the activity. As I said, most people don't request someone to commit an arson in a lifetime, let alone within the last six or eight years. And so, that testimony I believe is more probative under the circumstances of this case than it is prejudicial, although I do agree it's prejudicial."

But in weighing and balancing, I found that that statement should be allowed to come in, because Mr. Davis who had made the statement will be present in court and subject to cross examination by counsel for the plaintiff concerning the validity. And then the jury will be able to make a determination of whether or not they believe that that prior statement indicates a state of mind on behalf of the plaintiff.

(Doc. No. 73, pp. 13–14)

As the text of Rule 403 states: "Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice." (emphasis added) For this reason, a number of courts have held that FRE 403 creates a presumption of admissibility, and the district courts may utilize the rule only rarely to cause the exclusion of evidence. *See, United States v. Universal Rehabilitation Services (PA), Inc.,* 205 F.3d 657, 664–665 (3d Cir.2000)(citing *United States v. Morris,* 79 F.3d 409, 412 (5th Cir.1996); *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1502 (11th Cir.1985)). As noted by the Third Circuit, "Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair' ". *McQueeney v. Wilmington Trust Co.,* 779 F.2d 916, 923 (3d Cir.1985)(quoting *Dollar v.*

*Long Mfg., N.C. Inc.*, 561 F.2d 613, 618 (5th Cir.1977)).

The court believes that the relationship between Mr. Davis and Mr. Valenti, going back more than fifteen (15) years at the time of the trial; the similarity in circumstances between Mr. Davis' testimony concerning the prior solicitation by Mr. Valenti and the present circumstances under which this arson occurred including, but not limited to, the fact that both involved rental properties; both properties were on the brink of, or to be condemned; both properties would result in a financial loss to Mr. Valenti; and Mr. Davis resided at both properties in question, must be weighed. Additionally, Mr. Davis was an employee at one point in time of Mr. Valenti and appeared throughout his testimony to know Mr. Valenti very well. Mr. Davis' testimony is also supported by the very similar statements and testimony of Hodle, Perrego and Officer Bond. Finally, the court believes that the timing of the previous solicitation, less than six (6) years from the present arson, is admissible to show the intent, lack of mistake, state of mind and knowledge of Mr. Valenti.[3]

## II.  Joint or Several Policy

[8]  Next, the plaintiffs allege that the insurance policy issued to Anthony and Henrietta Valenti was not a "joint" policy and therefore a finding by the jury against one party should not foreclose the recovery by the other party. It is undisputed that both plaintiffs were insured under Allstate Policy No. 098095949. The Policy covered the Pugh street property owned by both Anthony and Henrietta Valenti.

The Policy contains, in pertinent part, the following language:

**Definitions Used Throughout This Policy:**

1  **"You"** or **"Your"**—means the policyholder named on the declarations page and that policyholder's resident spouse.

3  **"Insured Person"**—means **you** and, if a resident of **your** household, any relative or any dependent person in **your** care.

In the policy's "Concealment and Fraud" section is the following paragraph:

**Concealment and Fraud**

This policy is void if **you** intentionally conceal or misrepresent any material facts or circumstances, before or after loss.

(Trial Exh. No. 3, Policy, p. 2)(emphasis in original).

In addition, the policy is supplemented by the Pennsylvania Standard Fire Insurance Policy Addendum (commonly referred to as the "165 Line Addendum"). The "165 Line Addendum" is required by multiple states in fire insurance coverage contracts. Included in that "165 Line Addendum" is the following language:

**Concealment, Fraud**

This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstances concerning this insurance or the subject thereof, or the interest of the insured therein, or in a case of any fraud

---

**3.** It is interesting to note that the defendant moved to have additional evidence presented at trial concerning another fire at Mr. Valenti's home in Locust Lake in Monroe County. Though it may seem a coincidence that Mr. Valenti is involved in so many fires, the court did not allow that information to be presented

to the jury because there was no proof that fire was arson or a solicitation for arson was made by Mr. Valenti. Additionally, the evidence concerning that fire was approximately twenty (20) years old which in the court's mind may have made it too remote to be probative in this case.

or false swearing by the insured relating thereto.

The plaintiffs take the position that the "165 Line Addendum's" use of the term "the insured" is ambiguous. That is, the term "the Insured" could be construed as singular or plural. If singular, the policy would be several. If plural, the policy would be joint. If ambiguous, the policy must be construed against Allstate and in favor of Henrietta Valenti. (*see, The Med. Protective Co., infra*) Therefore, Mrs. Valenti would be entitled to one-half the benefits under the policy because it must be construed as a several (as opposed to joint) policy.

■■■■ The present inquiry into the language used in the insurance contract is governed by relatively well settled principles of insurance policy interpretation. " 'A provision of a contract of insurance is ambiguous if reasonably intelligent persons, *considering it in the context of the whole policy*, would differ regarding its meaning.' " *Carey v. Employers Mut. Cas. Co.*, 189 F.3d 414, 420 (3d Cir.1999)(emphasis added)(quoting *State Farm Mut. Auto. Ins. Co. v. Moore*, 375 Pa.Super. 470, 544 A.2d 1017, 1019 (1988)(further citation omitted)). " 'Ambiguous provisions in an insurance policy must be construed against the insurer and in favor of the insured; any reasonable interpretation offered by the insured, therefore, must control.' " *The Med. Protective Co. v. Watkins*, 198 F.3d 100, 104 (3d Cir.1999) (citation and internal quotation marks omitted). However, "[I]f the language of an insurance policy is clear and unambiguous, its ordinary meaning is to be given effect." *Imperial Cas. & Indemnity Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir.1988). The court "should interpret the policy so as to avoid ambiguities and give effect to all of its provisions." *The Med. Protective Co. v. Watkins*, 198 F.3d at 103 (citing *Little v.*

*MGIC Indem. Corp.*, 836 F.2d 789, 793 (3d Cir.1987)). Furthermore, the court should avoid rewriting the policy language in such a way that it conflicts with the plain meaning of the language. *Imperial Cas. & Indemnity Co.*, 858 F.2d at 131.

The court has reviewed the policy in this case as noted above. The definitions in this policy specifically define the term "insured person" to mean both the policyholders, and any resident of their household, relative or dependent under the named policyholders' care. There can be no question that this definition is not several, but joint as to both Anthony and Henrietta Valenti. Additionally, when the definition of "insured person" uses the word "you" or "your" it is referring to the definitional section that describes "you" or "your". That section unequivocally and unambiguously refers to the policyholders named on the declarations page and the policyholders' resident spouse. In this case, both Mr. and Mrs. Valenti are named on the declaration page, and in addition, both must be considered "that policyholder's resident spouse". Under these circumstances, there is no doubt, nor any ambiguity, that the provisions of this policy are joint.

Furthermore, the section concerning "Concealment and Fraud" within the policy also specifically refers, in bold letters, to the word **"you"**. Again, when referring to the definitional section, **"you"** must be interpreted as both Anthony and Henrietta Valenti because both are named on the declaration page, and additionally both are the resident spouse of the other.

Plaintiffs argue that the "165 Line Addendum" use of the language "the Insured"causes the ambiguity. The plaintiffs rely on *McAllister v. Millville*, 433 Pa.Super. 330, 640 A.2d 1283 (1994) and *Kundahl v. Erie*, 703 A.2d 542 (1997) for the proposition that use of the term "the

Insured" is ambiguous. It is true that both cases, while not addressing that issue in their own case, refer to other cases that have held "the Insured" language is ambiguous. (See e.g., *Opat v. State Farm Cas. & Ins. Co.*, 542 F.Supp. 1321, 1327 (W.D.Pa.1982) and *Maravich v. Aetna Life & Cas. Co.*, 350 Pa.Super. 392, 504 A.2d 896 (1986)). Here, however, the plaintiffs would not have us read the policy as a whole, but rather would have us completely ignore the plain, unambiguous "Definitions used throughout this policy." It is hard for this court to construe a more blunt statement that the policy is joint, than the definition which specifically refer to the named insureds on the declarations page and their resident spouse. As stated in *Kundahl*, supra at 545, fn. 4, "we fail to comprehend how this language injects ambiguity into the plain and unambiguous exclusionary provisions." In this insurance policy, "Insured Person" means both, Anthony and Henrietta Valenti. If the term "the Insured", in the "165 Line Addendum" could be ambiguous standing alone, it is not when viewed with the insurance policy as a whole and its definitional sections.

The "165 Line Addendum", according to the parties is required by the state legislature in all fire insurance policies. If interpreted as the plaintiffs suggest, the Pennsylvania Legislature must have intended that *all* fraud actions brought under *any* fire insurance policy may only be considered as several, trumping all other language in the policy. There is simply no evidence indicating that was the legislative intent.

Additionally, the court finds that the provisions of the "165 Line Addendum" are general provisions applicable to all fire insurance policies and the specific definitions within the policy issued to the Valentis are more particularly defined provisions which should control. As noted in *Kundahl, supra*,

> "in making this determination, courts must review the specific policies at issue and determine whether the policies unequivocally exclude coverage for innocent co-insureds ... if the language of the policy, particularly the exclusionary clause, clearly indicates that the insured's obligations are joint, then the prohibited acts of one insured bars all others from recovering." *Id.* at 544.

Here, it is clear that the specific concealment and fraud section of the policy refers to the insured as "you." The definitional section clearly and unambiguously defines the term "you" as "the policyholder named on the declarations page and that policyholders' resident spouse." (Policy, pp. 2–3).

As such, the court finds that the policy is unambiguous and can only be interpreted as a joint policy. To decide otherwise would be to "torture the plain and unambiguous language and meaning of the policy and is contrary to the legal standards articulated above." *McAllister, supra*, at 341, 640 A.2d 1283.

### III. Sufficiency of Evidence

■■■ The third issue raised by the plaintiffs is their allegation that the evidence was insufficient to support the jury's finding in favor of Allstate on its counterclaim for insurance fraud pursuant to 18 Pa.C.S.A. § 4117. As noted above, the court must view the evidence in a light most favorable to Allstate, as they prevailed before the jury. *LifeScan, supra*, at 350.

■■■ It is noteworthy that the defendant Allstate now contends that their burden of proof, in proving their counterclaim of insurance fraud, should have been a "preponderance of the evidence". (Doc. No. 80, p. 10) However, a review of the

documents filed in this case reveal that Allstate had never made that contention prior to this post-trial briefing. In fact, the defendant's pretrial memorandum (Doc. No, 21) is silent as the the burden of proof in the insurance fraud count. Similarly, their amended pretrial memorandum (Doc. No. 31) is also silent as to the burden of proof in the insurance fraud count. The defendant's points for charge failed to allege that the burden of proof in an insurance fraud case was by a preponderance of the evidence. (Doc. No. 35) The defendant had the opportunity to submit written requests to instruct the jury and to object to the proposed charge during a pre-charge conference with the court. At that conference, the court presented a written copy of the proposed charge to both counsel. The defendant failed to object to the charge, nor did it offer any alternative charge for the court to consider, on the issue of the burden of proof.

At the trial, the Court charged as follows:

### Counterclaims

In addition to the suit by the plaintiff(s) against the defendant, a counterclaim was filed by the defendant Allstate asserting that Anthony Valenti committed insurance fraud. This is a separate suit and you should consider this counterclaim separately, as you would if an independent suit on that claim was being tried before you. As to the insurance fraud claim, Allstate has the burden of proving its claim by clear and convincing evidence.

### Clear and Convincing Evidence

Clear and convincing evidence is evidence that is so clear, direct, weighty and convincing as to enable the jury to come to a clear decision, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted, so long as it carries a clear conviction of its truth. (Doc. No. 51, pp. 18–19)

Even following the charge, there was no objection by the defendant, although given the opportunity to object, outside of the hearing of the jury in accordance with Fed.R.Civ.P. 51. (Doc. 74, p. 145) Therefore, the defendant has waived the right to object to the instruction. *Id.*

While there is a dearth of case law concerning the burden of proof in an insurance fraud claim brought pursuant to 18 Pa.C.S.A. § 4117, there has been a finding by the Pennsylvania Superior Court that the burden of proof in an insurance fraud claim is by "clear and convincing evidence." See, *Rohm and Haas Co. v. Continental Casualty Co., et al,* 732 A.2d 1236, 1251 (Pa.Super.1999)("The burden of proving fraud is on the insurer who must prove, by clear and convincing evidence, that on the application, the insured knowingly made false statements or knowingly failed to disclose information which was material to the risk against which the insured sought to be protected." (citing *Tudor Ins. Co. v. Township of Stowe,* 697 A.2d 1010 (Pa.Super.1997))(additional internal citation omitted)). Our case, is slightly different in that the allegation of insurance fraud is that the request for coverage was fraudulent because Anthony Valenti failed to disclose his solicitation and/or conspiracy to burn down the premises.

Even if the defendant was only required to prove insurance fraud by a preponderance of the evidence, this court finds that the jury's verdict is supported by clear and convincing evidence. In a fraud case, such as this, it is often necessary to prove the facts by circumstantial evidence. "Fraud ... is never proclaimed from the housetops nor is it done otherwise than surreptitiously with every effort to conceal the truth of what is being done. So fraud can

rarely if ever be shown by direct proof. It must necessarily be largely inferred from the surrounding circumstances." *Shechter v. Shechter*, 366 Pa. 30, 33, 76 A.2d 753 (1950).

In the instant case, the facts developed before the jury established clear and convincing evidence in support of the verdict. This includes, but is not limited to:

1. The Pugh Street property was owned by Anthony and Henrietta Valenti;

2. No mortgage was held on the property;

3. The property was insured by Allstate Insurance Company for $75,000.00;

4. Anthony Valenti initially believed the property was only insured for $45,000.00;

5. The property had come under disrepair and was the subject of numerous citations by Edwardsville Borough;

6. A plumbing problem caused the abandonment of part of the building;

7. The Borough of Edwardsville had written to Anthony Valenti indicating that the property was unfit for human habitation;

8. Anthony Valenti found out the insurance value of the property was more than he expected, two weeks prior to the fire;

9. The fire that consumed the property was arson. (Court Exh. 6, Stipulation of Facts);

10. The jury heard evidence from Thomas Davis, Jr., that he had worked for Anthony Valenti; he had lived in an apartment complex owned by Anthony Valenti; he had a longstanding relationship with Anthony Valenti; and, had been solicited in the past to commit arson by Anthony Valenti;

11. The jury heard evidence that Frank Hodle had informed the Edwardsville Police Department, that he had worked for Anthony Valenti; he had lived in a residence owned by Anthony Valenti; and he had been solicited to burn down the Pugh Street property owned by Anthony Valenti that was the subject of this law suit.

12. The jury heard evidence that Howard Perrego worked with Anthony Valenti. Howard Perrego lived in a premises owned by Anthony Valenti. Howard Perrego overheard Anthony Valenti soliciting the arson of the Pugh Street property by Frank Hodle; and Howard Perrego reported this information to the Edwardsville Police Department.

13. Shortly after the above solicitation, the Pugh Street property was burned down.

14. Counsel for the plaintiffs had an opportunity, and did vigorously, cross-examine Thomas Davis, Jr., Frank Hodle, Howard Perrego, and Officer Bond of the Edwardsville Police Department.

The jury had the opportunity to judge the credibility of the witnesses. There is no question that the jury could have, and apparently did, find credible the testimony of those witnesses and the circumstantial evidence indicating that Anthony Valenti had solicited the arson of his Pugh Street property. The evidence at trial supports a finding by the jury of that solicitation, and the subsequent false submission of documentation following the arson by Anthony Valenti, amounted to insurance fraud.

This finding by the jury followed instruction that the burden of proof was by "clear and convincing evidence". (Doc. No. 51, pp. 18–19; Doc. No. 74, p. 138) The evidence submitted to the jury, viewed in a light most favorable to the jury winner,

**232**

Allstate, supports the jury's verdict of insurance fraud against Anthony Valenti by clear and convincing evidence.

Therefore, based upon a review of the record as a whole, the applicable law in both the Commonwealth of Pennsylvania and the Federal Courts, the plaintiffs' motion under Rules 50 and 59 of the Federal Rules of Civil Procedure (Doc. No. 55) is **DENIED.**

The issue of reasonable investigative expenses, costs of suit and attorneys fees pursuant to 18 Pa.C.S.A. § 4117(g), as requested by defendant Allstate (Doc. No. 64), are resolved in a separate Memorandum and Order filed this day. (Doc. No. 83)